

# NUMBER 13-14-00439-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**CITY OF BAY CITY,**                                      **Appellant**

**v.**

**BOBBIE P. GASPARD,**                                 **Appellee.**

### On appeal from the 23rd District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Justice Longoria

Appellee Bobbie Gaspard tripped and injured herself while exiting the Business Development Center (the Building) owned by appellant City of Bay City (the City). Gaspard filed a premises defect suit against the City. The City filed a plea to the jurisdiction, claiming that Gaspard did not plead sufficient facts to demonstrate that the

City had waived its sovereign immunity. After the trial court denied the City's plea, the City filed this appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West, Westlaw through Chapter 46, 2015 R.S.) (allowing an interlocutory appeal after the grant or denial of a government's plea to the jurisdiction). The City argues in three issues that the trial court erred in denying its plea to the jurisdiction. We reverse and render judgment for the City.

## I. BACKGROUND

According to the City, around 1994, City employees in the Building experienced problems with the wind blowing the front doors open, scattering all of their papers around, and lowering the temperature in the offices. Building Official Jimmy Hendrickson was given the job to fix the problem. Hendrickson stated during his deposition that he decided that the best solution was to enclose the covered front porch area with glass, and include exterior doors between the supporting columns of the porch roof. He testified that he hired a glass company to accomplish the task, sometime between 1994 and 1998. Hendrickson claimed that he personally met with Vaughn Watts, the owner of the glass company, to discuss the design of the porch area and to tell Watts exactly how he wanted the porch built. Hendrickson further asserted that the glass area was constructed exactly "as [he] intended and in accordance with the design that [he] developed." Outside the installed doors, there were only two steps: a step down from the doorway and a second step down onto the sidewalk. Hendrickson testified that "at the time that it was done, it appeared that was the only way we could do it."

Gaspard testified in her deposition, even though she could not give a specific number, that she had visited the Building about once a month for the previous five years

2

to attend meetings and that prior to the accident, she used the same stairs on almost every visit.[1] Gaspard admits that on October 30, 2012, she went to the Building as usual. As she left the Building, she tripped and fell on the stairs, sustaining serious injuries. Gaspard filed suit against the City and alleged a premises defect cause of action, claiming that the construction of the exit steps violated the City's building code. The City filed a plea to the jurisdiction, claiming that the City had not waived its immunity. Gaspard replied by filing an amended petition and a response. Attached to the response was an affidavit from Gaspard's daughter, Joan. In Joan's affidavit, she testified that about a week after her mother tripped, Joan went to the Building to speak with Karen, an employee of the City. A conversation ensued with Joan, Karen, and an unidentified woman inside the Building. Joan mentioned the alleged difficulty of the door threshold. Joan claims that one of the woman said the exact words, "most fall in when entering." However, Joan could not identify specifically which person said those words. The City objected to Joan's testimony as inadmissible hearsay; the court overruled the objection. The City also objected to the deposition testimony of Kelly Golda, Gaspard's retained expert, that was attached to Gaspard's response; this objection was overruled.

At a hearing on June 16, 2014, after hearing arguments, the trial court advised the parties that he would be denying the plea to the jurisdiction and told Gaspard that she had until July 2, 2014 to supplement the record, if she so desired. Gaspard responded to the City's objections and plea to the jurisdiction and attached an affidavit from Golda. On July 2, 2014, the trial court denied the City's plea to the jurisdiction. The City filed its notice of appeal on July 15, 2014.

---

[1] Gaspard testified that she had used the handicap ramp a few times but stopped using the ramp after finding the door at the top of the ramp locked on several occasions.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

To determine whether the plaintiff has affirmatively demonstrated the court's jurisdiction to hear the case, we consider the facts alleged by the plaintiff and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex. 2001). If a plaintiff pleads facts that affirmatively demonstrate an absence of jurisdiction and such defect is incurable, immediate dismissal of the case is proper. *Peek v. Equip. Serv. Co.,* 779 S.W.2d 802, 804—05 (Tex. 1989). Otherwise, the plaintiff should be given an opportunity to amend its pleadings to demonstrate jurisdiction. *Id.* The process of deciding whether jurisdictional facts have been affirmatively plead is similar to a summary judgment: if the evidence does not raise a genuine issue of fact regarding the jurisdictional issue, then the plea to the jurisdiction should be granted. *Miranda*, 133 S.W.3d at 228.

Sovereign immunity defeats a trial court's subject matter jurisdiction. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The trial court should determine the issue of subject matter jurisdiction, including whether sovereign immunity divests it of jurisdiction, at the earliest stage possible before allowing the case to proceed. *Id.* The plaintiff bears the burden of alleging facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Mission Consol. Indep. Sch. Dist. v. Flores,* 39 S.W.3d 674, 676 (Tex. App.—Corpus Christi 2001, no pet.). Whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that we review de novo. *Miranda,* 133 S.W.3d at 226.

## A. Governmental Functions

Government entities are immune from tort liability under the doctrine of sovereign immunity unless the legislature has specifically waived immunity. *Harris County v. Dillard,* 883 S.W.2d 166, 168 (Tex. 1994). "A municipality is liable for torts arising from the exercise of its proprietary functions, but it is generally immune from suit and liability for torts arising from the exercise of its governmental functions." *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 389 (Tex. App.—Fort Worth 2008, no pet.). Thus, determining a municipality's immunity from suit is a two-step inquiry. *Id.* First, we determine whether the function that forms the heart of the suit is governmental or proprietary. *Id.* Then, if the function is governmental, we determine whether immunity has been waived. *Id.* In the first step, we look to legislative definitions of governmental actions. For example, the legislature has specifically stated that "[f]or purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation is a governmental unit and the corporation's actions are governmental functions." *See* TEX. LOC. GOV'T CODE ANN. § 505.106(b) (West, Westlaw through Chapter 46, 2015 R.S.).

Additionally, section 101.0215 of the Texas Civil Practice and Remedies Code contains a non-exclusive list of governmental functions, including running civic centers and community development programs pursuant to Chapters 373 and 374 of the Local Government Code. TEX. CIV. PRAC. & REM CODE § 101.0215(a)(34) (West, Westlaw through Chapter 46, 2015 R.S.); TEX. LOC. GOV'T CODE ANN. §§ 373, 374 (West, Westlaw through Chapter 46, 2015 R.S.). Section 373 states that "through a community development program, a municipality may conduct work or activities designed to: (1) improve the living and economic conditions of persons of low to moderate income; (2)

5

benefit low or moderate income neighborhoods . . . ." Tᴇx. Lᴏᴄ. Gᴏᴠ'ᴛ Cᴏᴅᴇ Aɴɴ. § 373.004 (West, Westlaw through Chapter 46, 2015 R.S.).

**B. Waiver of Immunity**

If the suit does involve a governmental function, then the second step is to determine whether immunity has been waived. *Tex. Bay Cherry Hill, L.P.,* 257 S.W.3d at 389. One waiver of sovereign immunity is the Tort Claims Act, which allows suits to be brought against the government for injuries caused by: 1) the use of publicly-owned automobiles; 2) premises defects; and 3) the conditions or use of personal or real property. *See* Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ Cᴏᴅᴇ § 101.021 (West, Westlaw through Chapter 46, 2015 R.S.). The Act specifically waives sovereign immunity from two types of premise defect claims: a special defect and a regular premise defect. *Id.* § 101.022 (West, Westlaw through Chapter 46, 2015 R.S.). Which defect is involved affects the standard of care that will be applicable. *See City of Grapevine v. Roberts,* 946 S.W.2d 841, 843 (Tex. 1997).

Special defects are limited to suits involving "excavations or obstructions on highways, roads, or streets" but implicate a higher standard of care then regular premise defect claims. *See id.* § 101.021. Special defects are usually the kind associated with the road itself. *See Roberts,* 946 S.W.2d at 843. To determine if a defect is special, courts should look to factors such as the size, nature, location, and permanence of the condition. *See City of Austin v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.). However, even when courts have found special defects that are not on the road itself, they additionally find that the defects must still affect ordinary users of the sidewalk. *See Roberts,* 946 S.W.2d at 843; *City of El Paso v. Chacon,* 148 S.W.3d 417, 422–23

6

(Tex. App.—El Paso 2004, pet. denied); see also *Payne,* 838 S.W.2d at 239 (holding that a culvert was not a special defect because pedestrians walking up and down the sidewalk normally would not come across the culvert; only pedestrians who walked perpendicular to the sidewalk would encounter the alleged defect).  If the defect is special, then the landowner is required to use ordinary care to reduce unreasonable risks of harm created by conditions that the landowner was, or reasonably should have been, aware of.  *See Roberts,* 946 S.W.2d at 843

In contrast, a regular premise defect is any defect not classified as special.  *See id.*  In a regular premise defect case, the plaintiff must plead:

> 1) a condition of the premises created an unreasonable risk of harm to the licensee; 2) the owner actually knew of the condition; 3) the licensee did not actually know of the condition; 4) the owner failed to exercise ordinary care to protect the licensee from danger; and 5) the owner's failure was a proximate cause of the injury to the licensee.

*State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex. 1992).  This requires the landowner to actually be aware of the allegedly dangerous condition; with a special defect, a landowner may still be liable if he should have been reasonable aware of the allegedly dangerous condition.  The plaintiff must raise a genuine issue of material fact on each of the five elements of a regular premises defect claim.  *See Payne,* 838 S.W.2d at 237.

One element is that the premise owner actually knew of the dangerous condition.  *Id.*  Actual knowledge is knowing of an existing dangerous condition at the time of the accident, not merely knowing that a dangerous condition could possibly develop over time.  *See Reyes v. City of Laredo,* 335 S.W.3d 605, 608 (Tex. 2010) (per curiam); *City of Dallas v. Prado, 373 S.W.3d 848, 854* (Tex. App.—Dallas 2012, no pet.).  Although the

7

absence of reports is just one factor to consider when determining whether a premises owner had actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex. 2008) (per curiam); *see State ex rel. State Dept. of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 330 (Tex. 2002) (holding that the State had no actual knowledge of the dangerous condition because the plaintiff "did not introduce any evidence showing that anyone had reported" the dangerous condition to the State). Circumstantial evidence can establish actual knowledge but "only when it 'either directly or by reasonable inference' supports that conclusion. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (citing *State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex. 2002)).

If the plaintiff does not raise a genuine issue of fact on each element, the plea to the jurisdiction should be granted. *See Miranda*, 133 S.W.3d at 228. Unchallenged hearsay can be used to raise issues of fact, but inadmissible hearsay that has been properly objected to cannot be used to raise a genuine issue of material fact. *See* Tex. R. Evid. 802; *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 233 (Tex. 1962); *Stovall & Associates, P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 796 (Tex. App.—Dallas 2013, no pet.); *Patterson v. Mobiloil Fed. Credit Union*, 890 S.W.2d 551, 555 (Tex. App.—Beaumont 1994, no writ).

However, these waivers do not apply to claims based on discretionary acts of the government. Tex. Civ. Prac. & Rem Code Ann. § 101.056. This is an exception to the exception; even if a claimant raises a genuine issue of material fact on every element of the premise defect claim, the governmental entity has not waived its immunity to suit if

8

the act or failure to act was discretionary. *See id.* Whether an act is discretionary is a question of law. *State v. Miguel,* 2 S.W.3d 249, 251 (Tex.1999) (per curiam). An act that requires the exercise of judgment is discretionary. *City of Dallas v. Hughes*, 344 S.W.3d 549, 556 (Tex. App.—Dallas 2011, no pet.). The government may be liable if the law "mandate[s] performance with such precision that nothing is left to discretion or judgment." *Id.* But design decisions are considered discretionary acts. *See Mogayzel v. Texas Dept. of Transp.*, 66 S.W.3d 459, 465 (Tex. App.—Fort Worth 2001, pet. denied) (holding that the design of the highways is discretionary); *City of Watauga v. Taylor,* 752 S.W.2d 199, 202 (Tex. App.—Fort Worth 1988, no writ) (finding that the design of sewers and drains is discretionary); *see also City Of McAllen v. Hernandez*, No. 13-04-00182-CV, 2005 WL 2000818, at *5 (Tex. App.—Corpus Christi Aug. 22, 2005, pet. denied) (mem. op.) (observing that the design of the lid covering a drainage box near the sidewalk was discretionary).

This Court has held that the "decision of a governing body to choose one design over another is the essence of the exercise of discretion." *Sanchez v. Matagorda County*, 124 S.W.3d 350, 353 (Tex. App.—Corpus Christi 2003, no pet.). "This distinction is often stated in terms of actions taken at the planning or policy-making level, which are immune, and actions taken at the subordinate or operational level, which are not immune." *Mitchell v. City of Dallas*, 855 S.W.2d 741, 745 (Tex. App.—Dallas 1993), *aff'd,* 870 S.W.2d 21, 22 (Tex. 1994); *McKinney v. City of Gainesville*, 814 S.W.2d 862, 866 (Tex. App.—Fort Worth 1991, no writ).

For example, in *Hernandez*, the plaintiff walked over a drainage box, and the shop-made lid tilted, causing the plaintiff to seriously injure her legs. 2005 WL 2000818, at *1.

9

The plaintiff claimed that the city had violated its own engineering code in designing this lid and thus the city had waived its immunity in this premise defect suit. *Id.* However, this Court held that the design of the lid was a discretionary act, despite the fact that it violated a specific engineering code. *See id.* at *6.

Similarly, in *Sanchez*, the plaintiff sued the county for the design of a bridge. 124 S.W.3d at 353. The City Commissioner testified that the layout of the bridge "was part of the bridge design and was based partially on the increased cost that would have been incurred" to build the bridge differently. *Id.* We held that this was not "a situation where a governmental employee negligently performed the task he was ordered to do." *Id.* To the contrary, we concluded that the decision to design and remodel the bridge by adding wooden planks longitudinally was a "discretionary act of a county government." *Id.*

On the other hand, maintenance activities undertaken at the operational level are not discretionary functions and are not immune from liability. *Mitchell*, 855 S.W.2d at 745; s*ee City of Round Rock v. Smith,* 687 S.W.2d 300, 303 (Tex.1985); *Taylor,* 752 S.W.2d at 202; *Hamric v. Kansas City S. Ry.,* 718 S.W.2d 916, 919 (Tex. App.—Beaumont 1986, writ ref'd n.r.e.). Thus, a government entity is immune from liability if an injury results from the formulation of policy but is not immune from liability if the injury is caused by the "negligent implementation of that policy." *Mitchell*, 855 S.W.2d at 745; *see State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979).

### III. DISCUSSION

In three issues, the City argues that the trial court erred by: 1) denying the City's plea to the jurisdiction; 2) considering Gaspard's deposition notwithstanding the changes, which affected the court's ruling on the plea to the jurisdiction; and 3) failing to strike the

objectionable portion of Joan's affidavit, which also affected the court's ruling on the plea to the jurisdiction. We will consider these three issues as one because issues two and three are sub-issues of issue one. We conclude that the trial court erred in denying the City's plea to the jurisdiction because Gaspard fails to raise a genuine issue of fact on every element of her premise defect claim. Furthermore, Gaspard's suit arose out of a discretionary government function. As such, the City had not waived its sovereign immunity to this type of suit, and the trial court had no jurisdiction to hear this case. There is nothing that Gaspard could plead to change these jurisdictional facts; therefore, the case should be dismissed without an opportunity to amend.

## A. The Underlying Action Was Governmental

The City argues that its plea to the jurisdiction should have been granted. The first step in determining the City's immunity from liability is determining whether the underlying action is governmental or proprietary. *Tex. Bay Cherry Hill,* 257 S.W.3d at 389. The City asserts that Gaspard's claims arise out of a governmental function because: 1) the Building is used by the Bay City Community Development Corporation (BCCDC), the City's 4B sales tax corporation; and 2) the BCCDC is engaged in activities on the enumerated list of government functions in the Torts Claim Act. The City asserts, and Gaspard does not refute the claim, that the BCCDC is the City's 4B sales tax corporation. Therefore, the decision to design and build the steps and the glass porch was an action of the City's 4B sales tax corporation, which is legislatively defined to be a governmental function. TEX. LOC. GOV'T CODE ANN. § 505.106(b) (West, Westlaw through Chapter 46, 2015 R.S.).

11

Furthermore, the Tort Claims Act lists programs of community development as governmental functions. TEX. CIV. PRAC. & REM CODE § 101.0215(a)(34). Community development programs conduct work to "improve the living and economic conditions of persons of low and moderate income" and to "benefit low or moderate income neighborhoods." TEX. LOC. GOV'T CODE ANN. § 373.004 (West, Westlaw through Chapter 46, 2015 R.S.). The BCCDC offers low-cost business opportunities for a low-income community to encourage economic growth; this fits the definition of a community development program as outlined in the Local Government Code. *See id.* Thus, we conclude that Gaspard's claim arose out of a governmental function.

## B. The City Has Not Waived Immunity

Finding that the underlying action is governmental, we next determine if the City's immunity has been waived. *Tex. Bay Cherry Hill,* 257 S.W.3d at 389. We analyze whether there are genuine issues of material fact on every element of the premise defect claim such that jurisdiction is affirmatively demonstrated. *See Miranda,* 133 S.W.3d at 226; *Payne,* 838 S.W.2d at 237. Both parties agree that Gaspard's claim would fall under the second waiver found under the Torts Claim Act: a premise defect claim. *See* TEX. CIV. PRAC. & REM CODE § 101.021 (West, Westlaw through Chapter 46, 2015 R.S.). Gaspard claims that the stairs at issue are a special defect as opposed to a regular premise defect. This case involves the design of steps that lead into a building, which seemingly has little to do with roadways. Gaspard argues that a defect does not have to physically be in the road to be in the road to be considered a special defect. *See Rangel,* 184 S.W.3d at 383. This is true, but, as the *Rangel* case also points out, the defect must

12

still present an "unexpected and unusual danger to ordinary users of roadways" to be considered a special defect. *Id.* (citing *Payne,* 838 S.W.2d at 238).

The steps do not meet the general classification of special defects because they are not an obstruction or excavation of the road itself. Furthermore, the threshold of the Building does not pose an unusual danger to ordinary users of the sidewalk because the alleged defect would only affect people who are specifically entering or exiting the Building. In other words, only a pedestrian "whose destination required him to leave the proximity of the road" would encounter the alleged defect. *See Payne,* 838 S.W.2d at 239. Therefore, the steps are properly classified as a regular premise defect claim. To survive a plea to the jurisdiction on a regular premise defect claim, the claimant must be able to raise a genuine issue of material fact on the five elements listed in *Payne.* 838 S.W.2d at 237

i. **Genuine Issues of Material Fact**

The City asserts that there are no genuine issues of material fact on at least two of the elements of a regular defect claim: 1) that the City had actual knowledge of the alleged defect and 2) that Gaspard had no knowledge of the defect. *Id.* All the City employees testified that they never received any complaints about the steps over the last two decades since the steps were built.[2] This shows that the City had no actual knowledge of the allegedly dangerous condition. *See Aguilar,* 251 S.W.3d at 513;

---

[2] Karen Hitzfield testified that she had worked for BCCDC at the Building since 1998. Since that time, she testified that she had never seen or heard anybody fall or injure themselves at the front entrance steps. Rhonda Clegg, the City Secretary and custodian of the official records of the City, filed an affidavit stating that after searching the official records, she found no records of any complaints, e-mails, or reports of injury involving the Building or its steps. Hendrickson testified that for the last 20 years, he thought the front entrance was safe, even though the design was "unusual," especially since nobody had been injured on it or ever complained about it.

13

*Gonzalez,* 82 S.W.3d at 330.  The only other evidence in the record that might indicate that the City actually knew about the alleged dangerous condition was the affidavit from Joan Gaspard. [3]  The City objected to Joan's affidavit as hearsay, to which Gaspard retorted that it was an admission by a party-opponent.  *See* TEX. R. EVID. 801(e)(2)(D). However, the BCCDC not only houses City employees but also houses the offices of numerous other non-governmental companies.  Joan's affidavit does not properly show that the declarant was an agent of the City, as opposed to an employee of the other companies, to be admitted as a party opponent.  *See Farlow v. Harris Methodist Fort Worth Hosp.,* 284 S.W.3d 903, 928 (Tex. App.—Fort Worth 2009, pet. denied) (finding that the testimony of a witness who assumed that a woman was a city employee was inadmissible hearsay because there was no evidence that the alleged declarant was actually a city employee); *see also Trencor, Inc. v. Cornech Mach. Co.,* 115 S.W.3d 145, 151 (Tex. App.—Fort Worth 2003, pet. denied) (holding that agency must be shown; it cannot be presumed).

Without any applicable exceptions, Joan's affidavit is inadmissible hearsay.  *See* TEX. R. EVID. 802.  Allegations that someone in the Building knew about the allegedly dangerous condition does not allow us to presume that person to be a City employee. *See Trencor,* 115 S.W.3d at 151.  Agency cannot be presumed on this mystery declarant. *Id.*  We conclude that there is nothing left to raise a genuine issue of fact regarding the

---

[3] Appellee additionally argues that by adopting a building code and by building the steps the City had knowledge of the allegedly dangerous condition.  Hendrickson testified that, at the time the steps were designed and built, he thought the steps were safe and in compliance with the building code, which authorized the building director to approve alternative methods if they were safe.  This shows that the City, rather than having actual knowledge of a dangerous condition, actually thought there was no dangerous condition.  Simply building the steps does not reasonably support an inference that the City had actual knowledge.  *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (holding that circumstantial evidence establishes actual knowledge only if it supports that conclusion "either directly or through reasonable inference").

14

City's actual knowledge of the allegedly dangerous condition because inadmissible hearsay that was properly objected to cannot be used to raise genuine issues of fact. *See Penn,* 363 S.W.2d at 233; *Stovall*, 409 S.W.3d at; *Patterson*, 890 S.W.2d at 555.

Another element Gaspard must allege is that she had no knowledge of the dangerous condition. *See Payne,* 838 S.W.2d at 237. The City raised concerns regarding the evidence on whether Gaspard was aware of the defect. During Gaspard's deposition, the City asked a question about whether Gaspard felt that she had ever noticed anything dangerous about the steps. To this, Gaspard originally replied, "Yes, I've always felt like it was dangerous and usually held onto the door to get out." For "clarification" purposes, Gaspard later amended her answer after the deposition to simply say, "No."

The City followed up by asking, "Why did you feel like it was dangerous?" To this, Gaspard originally stated, "Because the way it's constructed." Again for "clarification" purposes, Gaspard changed her answer after the deposition to read, "I didn't understand the question." Later in the deposition, Gaspard's own attorney asked her on direct examination, "[P]rior to the accident did you have any reason to believe those steps were particularly or uniquely dangerous as against other steps." Gaspard answered, "Well, they were narrow; and I was always careful when I came up." Gaspard's amended answer was changed, once again for "clarification," to say, "Prior to the Oct. 30, 2012 fall I was careful about using any steps. I preferred ramps."

The City argues that this is evidence of a sham affidavit. It cites *Farroux v. Denny's Restaurants, Inc.* in support of this position. 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.). *Farroux* states if a change in a deposition goes to a material point, without explanation, and clearly contradicts earlier testimony, then it is a "sham"

15

affidavit that should be disregarded. *Id.* However, our Court doesn't generally recognize the sham affidavit doctrine. *Del Mar Coll. Dist. v. Vela*, 218 S.W.3d 856, 862 (Tex. App.—Corpus Christi 2007, no pet.). If the deposition testimony is contradictory, then it presents a genuine issue of fact. *Id.* The contradictory nature would merely affect the weight this testimony would be given. *Id.*

However, even considering Gaspard's deposition testimony, we conclude that the facts alleged by Gaspard do not affirmatively show that the trial court had jurisdiction to hear this case. As pled, the facts affirmatively demonstrate a lack of jurisdiction because the underlying action was a discretionary governmental action performed by a 4B sales tax corporation carrying out a community development program; furthermore, Gaspard has not raised genuine issues of fact as to the City's actual knowledge of the allegedly dangerous condition. Therefore, Gaspard failed to demonstrate that the City has waived its immunity under the Torts Claims Act.

ii. **Discretionary Acts**

However, assuming without deciding that Gaspard did raise a genuine issue of material fact on every element of the premise defect claim, a government entity is still immune from tort liability for its discretionary actions, even if the underlying actions constituted a waiver of immunity under the Torts Claims Act. *See* TEX. CIV. PRAC. & REM CODE ANN. § 101.021. Gaspard argues that the City's actions in remodeling the Building and constructing the glass porch were not discretionary since the city's building code dictates how to design steps leading out of a building. Specifically, the act was not discretionary because the Code provides that there should be a landing level with the floor outside the door of a building before any steps lead to the ground. However, we

16

agree with the City that its actions in designing the glass porch and door threshold were discretionary. In *Hernandez* and *Sanchez,* discussed above, this Court has previously held that the governmental act of deciding to design a structure in a particular way is immune from tort liability. *See Hernandez*, 2005 WL 2000818, at *5; *Sanchez*, 124 S.W.3d at 353. The same is true here: Hendrickson stated that he designed the glass porch this way because of a "cost consideration" to the City, just like the city official in *Sanchez. See* 124 S.W.3d at 353.

Additionally, according to Hendrickson, if the steps were built as specified in the 1988 code, the door threshold would be too close to the roadway. Section 102.6 of the 1988 code specifically authorizes alternative designs and methods of construction "not specifically prescribed by the Code, *provided any such alternative has been approved by the Building Official.*" (emphasis added). Hendrickson approved the alternative in this case and testified that he believed this alternate design was safe; he further testified that at the time the glass porch was made, "it appeared that was the only way we could do it."

This case is distinguished from other scenarios in which the government might be liable. The City did not choose an unsafe design, knowing it was unsafe or knowing it was violating a code. Rather, Hendrickson believed that the expansion was safe and built in compliance with the 1988 edition of the Southern Building Code in effect at the time.[4] The city did not have a safe design plan that was negligently built. *Id.* Rather, the City considered the safety and cost of all alternatives and then built the steps as intended, in

---

[4] Gaspard argues that the City is mandated by the State to adopt and adhere to a building code; therefore, the construction of steps could not be discretionary. However, the building code in place at the time was the 1988 locally-adopted building code. The first statewide, mandatory municipal building code was not enacted until 2006. *See* TEX. LOC. GOV'T CODE ANN. § 214.216 (West, Westlaw through Chapter 46, 2015 R.S.). Thus, there was no state-mandated method to build the stairs at the time the glass porch was built.

good condition. The City's decision to choose one design over another is the "essence of discretion." *Id.* We conclude that the City's design of the steps was a discretionary act protected against liability. Furthermore, there is nothing Gaspard could amend in her pleadings to bestow jurisdiction; thus, the case should be outright dismissed instead of allowing for further amendment of the petition. *See Peek,* 779 S.W.2d at 804.

We sustain the City's sole issue.

## IV. CONCLUSION

We reverse the decision of the trial court, render judgment granting the City's plea to the jurisdiction, and dismiss the case with prejudice.


NORA LONGORIA,
Justice


Delivered and filed the
13th day of August, 2015.

18