Bob Pemberton, Justice
This appeal, from an interlocutory order denying a plea to the jurisdiction,[1] stems from a trip-and-fall lawsuit brought by the appellee, Courtland Speer, involving a cable barrier under the control of the appellant, the Texas Facilities Commission. The pivotal issue concerns the duty element Speer must prove to bring a negligence claim against the Commission under the applicable waiver of sovereign immunity provided in the Tort Claims Act (TTCA).[2] The Commission urges that its duty to Speer is limited to that owed by a private landowner to a licensee with respect to an ordinary premises defect (i.e., requiring *248 proof that the Commission had actual notice of an unreasonably dangerous condition presented by the cable barrier), the standard that generally governs premises-defect claims brought under the TTCA.[3] Speer contends that he need only prove that the Commission had constructive notice of the dangerous condition because the cable barrier is a "traffic sign, signal, or warning device," triggering an alternate set of TTCA standards.[4] We conclude that the licensee duty controls and that Speer failed to establish a TTCA waiver of sovereign immunity under that standard.
The underlying circumstances are largely undisputed. The Commission manages State-of-Texas-owned properties that include a surface parking lot, designated as "Lot 27," that is located at the southeastern corner of the "T" intersection where Austin's Congress Avenue dead-ends into 11th Street as the latter runs east-west alongside the southern boundary of the Texas Capitol grounds. At relevant times, Lot 27 has been used for State employee parking during working hours but has otherwise been made available for public use, save in instances when the Commission has rented spaces in connection with special events, film productions, and the like. The Commission has similarly left Lot 27 open to pedestrians and acknowledges that such persons regularly traverse the property and could be expected to do so.
Lot 27 was constructed with vehicle access points that included a short driveway near its northwestern corner that crosses an adjacent sidewalk and opens into 11th Street. This driveway (which we will term "the Driveway" to distinguish it from other vehicle access points eastward on 11th Street) is roughly aligned with a vehicle exit that emerges southward from the Capitol grounds on the opposite (north) side of 11th Street and also with the point at which westbound vehicles on 11th Street are directed to stop when a traffic light at the Congress intersection is signaling red. To address what a Commission representative termed an "intersection problem" or "issue" with vehicles entering and exiting 11th Street at the Driveway's location, a vehicle barrier had been constructed across the Driveway several years earlier. This barrier consists of two concrete posts or bollards, each roughly four feet in height, that are affixed to the Driveway surface on either side as the Driveway meets Lot 27's northern edge. Between the two bollards is suspended a cable, normally at a height of approximately three or four feet. Although apparently constructed originally by a different State agency, there is no dispute that the Commission has controlled and maintained the cable barrier at relevant times, incident to its management of Lot 27.
Speer alleges that he tripped over the cable barrier and "violently fell" as he was walking through Lot 27 at approximately 10 p.m. one evening in February 2012. Complaining of resultant injury, Speer sued the Commission for damages. The gravamen of Speer's liability theory is that the cable barrier had presented a tripping hazard, causing him to fall, because it (1) had been hanging much lower than originally designed and constructed, at roughly the middle of his shins, due to some sort of intervening damage that had partially uprooted one of the bollards and caused the suspended cable to sag; and (2) had likewise lost, through time and wear, hanging reflectors and reflective tape that had originally *249 warned of its presence.[5] Speer alleged that the condition rendered the cable "virtually invisible at night," when he fell.
As the claimant, Speer had the initial burden to allege facts that would affirmatively demonstrate the district court's jurisdiction to adjudicate his claims.[6] Because he seeks damages from the Commission, Speer unquestionably must overcome sovereign immunity, which bars his suit jurisdictionally unless and to the extent the State consents.[7] Such consent through statutory waiver must be expressed in "clear and unambiguous language,"[8] effectively a presumption in favor of retained immunity if the statute is ambiguous.[9] To establish jurisdiction through a waiver of immunity, Speer relies on the TTCA, "a unique statutory scheme" in which sovereign immunity from suit is waived to the extent of liability that the Act creates.[10] The TTCA, specifically Section 101.021, creates liability against a governmental unit (and therefore also waives immunity from suit) with respect to three categories of liability theories if they would lie against a private defendant under the common law: (1) certain personal-injury or property-damage claims arising from use of motor vehicles; (2) personal injury "caused by a condition or use of tangible personal ... property"; and (3) premises-defect claims.[11] However, other TTCA provisions *250 modify the scope and effect of the waivers otherwise afforded under Section 101.021. Two are of primary importance in this case: Subsection (a) of Section 101.022, which the Commission emphasizes; and Subsection (a)(2) of Section 101.060, on which Speer relies.
Subsection (a) of Section 101.022 modifies the elements of a premises-defect theory otherwise imported from the common law by generally limiting the governmental unit's duty owed to the claimant "only [to] the duty that a private person owes a licensee on private property," unless the claimant pays for his or her use of the premises.[12] That duty consists of not injuring the licensee through willful, wanton, or grossly negligent conduct, and to either warn the licensee or make reasonably safe an unreasonably dangerous condition of which the owner has actual knowledge and the licensee does not.[13] Consequently, to invoke the TTCA's immunity waiver for premises-defect claims, the claimant generally must prove (absent proof of willful, wanton, or grossly negligent conduct) that (1) a condition of the premises created an unreasonable risk of harm to the claimant; (2) the premises owner actually knew of the condition; (3) the claimant did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the claimant from danger; and (5) the owner's failure was a proximate cause of injury to the claimant.[14]
This "heightened standard for premises defects"[15] stands in contrast to the duty that a private premises owner would owe to an invitee, which is generally to "make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not."[16] Thus, as compared to a licensee, an invitee need only prove that the premises owner knew or reasonably should have known of the unreasonably dangerous condition and need not prove that the invitee lacked actual knowledge of the condition.[17] This invitee standard, the Texas Supreme Court has long held, governs TTCA immunity waiver as to premises-defect claims that arise from "special defects,"[18] a term the court has determined to mean conditions akin to "excavations or obstructions" that threaten the "ordinary users of roadways"
*251 in "the normal course of travel."[19] The divergence in duty standards is rooted in Subsection (b) of TTCA Section 101.022, which specifies that "[t]he limitation of duty in this section [i.e., the licensee standard generally imposed by Subsection (a) ] does not apply to the duty to warn of special defects such as excavations or obstructions of highways, roads, or streets."[20]
Subsection (b) of Section 101.022 also contains a parallel exemption from the licensee standard for "the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060."[21] Section 101.060, again, is the provision on which Speer relies. It is addressed to premises-defect claims arising from certain dangerous conditions involving "a traffic or road sign, signal, or warning device" and imposes special limitations on a waiver of immunity otherwise effected by Section 101.021 in that context.[22] There are three limitations, each set forth in Subsection (a) of Section 101.060. First, Subsection (a)(1) provides that the TTCA "does not apply" (so immunity is retained as to) "a claim arising from ... the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit."[23] Second, immunity is similarly retained in Subsection (a)(3) as to "a claim arising from ... the removal or destruction of a traffic or road sign, signal, or warning device by a third person," but subject to a qualification: "unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice,"[24] signaling that a waiver under Section 101.021 would still have effect in that instance. Finally, and most critically here, Subsection (a)(2) retains immunity as to "claims arising from ... the absence, condition, or malfunction of a traffic or road sign, signal, or warning device," subject to the qualification "unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice."[25] Informed by the contrast with Subsection (a)(3)'s requirement of "actual notice," this Court has previously held that "notice" in Subsection (a)(2) includes either actual or constructive notice of the "absence, condition, or malfunction" of the "traffic or road sign, signal, or warning device."[26]
*252 Section 101.060, Subsection (a)(2), corresponds to Section 101.022, Subsection (b) 's exemption from the licensee standard for "the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060."[27] Read together, the net effect of these provisions is that the TTCA waives immunity with respect to a premises-defect claim founded on an unreasonably dangerous condition arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device" only in instances where the governmental unit had actual or constructive notice of the "absence, condition, or malfunction" and failed to correct it within a "reasonable time" thereafter, but such a claim is not subject to the licensee standard generally imposed by Section 101.022, Subsection (a). Conversely, Subsection (a)(2) provides a "safe harbor" for the government once it "corrects" the "absence, condition, or malfunction."[28]
Speer insists that his claims come within Subsection (a)(2)'s purview because the alleged tripping hazard to which he attributes his injuries arose from the "condition" of "a traffic or road sign, signal, or warning device"-namely, what he alleges to be the poorly visible and low-hanging "condition" of the cable barrier itself, or alternatively the "condition" of degraded or missing reflectors on the cable. The Texas Supreme Court has previously construed "condition" of "a traffic or road sign, signal, or warning device" to mean "not just any condition, but only something 'wrong' with the traffic sign or signal such that it would require correction by the State after notice," more specifically "situations in which the sign or signal was either (1) unable to convey the intended traffic control information, or (2) conveyed traffic control information other than what was intended."[29] The former category has been held to include situations where the visibility of a traffic signal or sign has been obscured.[30] Speer insists that the same rationale logically extends to his claims, as the tripping hazard of which he complains allegedly stemmed from the poor visibility of the cable barrier.
But Speer's arguments can have merit only if the cable barrier or associated reflective devices qualify as "a traffic or road sign, signal, or warning device" under Subsection (a)(2). Speer presumes a broad, colloquial meaning of "traffic or road sign, signal, or warning device," further emphasizing deposition testimony from Commission representatives in which they similarly accepted his characterization of the cable barrier as in some sense *253 being a "traffic control" device.[31] But the relevant concern here is instead the meaning and scope of "traffic or road sign, signal, or warning device" as used in the TTCA , and that inquiry requires a more extensive examination of the Act as a whole that accounts for statutory features that contextually limit what might otherwise seem to be the "ordinary" or "plain" meaning of words at first blush.[32] These are questions of law that we consider de novo ,[33] and we are further guided by the rule, noted previously, that a statute is not to be construed to waive immunity unless such intent is expressed in "clear and unambiguous language."[34]
When read in light of its surrounding statutory context, Subsection (a)(2)'s "traffic or road sign, signal, or warning device" does not extend to the cable barrier or reflectors, let alone with the required "clear and unambiguous language." That context begins with Subsection (b) of Section 101.060, which specifies that "[t]he signs, signals, and warning devices referred to in this section"-which necessarily refers to a "traffic or road sign, signal, or warning device" as referenced in Subsection (a)-"are those used in connection with hazards normally connected with the use of the roadway."[35] Subsection (c) then specifies that Section 101.060"does not apply to the duty to warn of special defects such as excavations or roadway obstructions."[36] Subsection (c) thus references, and reinforces, a distinction already implicit in Subsection (b) to Section 101.022, which separately exempts from the licensee standard both "the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets" and "the duty to warn of the absence, condition, or malfunction of traffic signs, signal, or warning devices" that would arise in the circumstances addressed in Subsection (a)(2) to Section 101.060.[37] Viewed within this broader statutory framework, "hazards normally connected with the use of the roadway " as referenced in Section 101.060, Subsection (b), denotes a class of roadway hazards that are distinguished from special defects.
Special defects, again, are akin to "excavations or obstructions on highways, roads, or streets,"[38] and are thus "special" in the sense of presenting an "unexpected and unusual danger" to ordinary roadway users.[39] Against that backdrop, "hazards *254 normally connected with the use of the roadway" is a term of contrast contemplating hazards more routinely or inherently connected with roadway use, such as relating to vehicle speed, intersecting paths of movement, or features of the roadway that do not rise to equivalence with excavations or obstructions. Collectively, the statutory framework reflects the Legislature's policy judgment that governmental units should bear greater risk and responsibility to roadway users with respect to excavation or obstruction-like hazards (invitee standard) than with other roadway hazards (ordinarily the licensee standard applicable to premises-defects generally).[40] And within the latter category, the Legislature has imposed special risk-allocation rules in Section 101.060 with respect to whether or when a governmental unit has opted to install "traffic signs, signal, or warning devices" to address the underlying hazard.
But more critically here, "hazards normally connected with the use of the roadway " denotes a feature shared in common with special defects. Through a succession of decisions, the Texas Supreme Court has firmly established that the "special defect" contemplated by the TTCA, while not necessarily required to be located on or in a roadway itself, nevertheless must present a danger relative to the objective expectations of "ordinary users of roadways" (i.e., of the "highways, roads, or streets" referenced in the statute) in the "normal course of travel" there and excludes hazards encountered at points beyond.[41] Among the hazards the court has held to be excluded are a highway guardrail into which a motorist had crashed, reasoning that the device did not "impede travel or otherwise 'block' the road for an ordinary user in the normal course of travel, but rather ... delineate[d] the roadway's bounds."[42] Subsection (b)'s reference to "hazards ... connected with the use of the roadway " evokes the same concept.
Consistent with these conclusions, one of our sister courts rejected out of hand a contention that Section 101.060 could apply to a premises-defect suit against the Department of Public Safety regarding conditions in a parking lot where the agency conducted driving tests.[43] Moreover, while *255 neither party presents and we have not uncovered any precedent that more closely addresses the argument Speer now makes, we observe that the cases applying Section 101.060 have characteristically involved issues with stop signs, speed limit signs, traffic lights, or similar devices used to regulate or warn roadway users in their normal course of travel there.[44]
Speer's pleadings negate that his claims arose from a "condition" of a "traffic or road sign, signal, or warning device" in any sense relevant to Section 101.060. Even if the cable barrier or reflectors could be said to address some sort of "hazards normally connected with the use of the roadway" in the adjacent 11th Street (e.g., the "intersection problem" referenced earlier), Speer alleged that his fall and injury occurred instead while he "was walking through" Lot 27, a departure from any nearby roadway.[45] In this respect, Speer's position is akin to the motorist whose claim of special defect failed because he had left the normal path of travel and collided with the highway guardrail.[46] Accordingly, Section 101.060, Subsection (a)(2), does not apply to Speer's claims, let alone clearly or unambiguously.
In addition to his reliance on Section 101.060, Subsection (a)(2), Speer purports to disclaim reliance on a premises-defect theory altogether. While acknowledging that he asserted a premises-defect theory (including special defect) in earlier versions of his pleadings, Speer emphasizes that he has since amended his pleadings to delete such references and, at least in that sense, "[does] not allege a premises defect [claim] in his latest petition." This line of argument appears to derive in part from a mistaken perception that Section 101.060, Subsection (a)(2), is a stand-alone waiver of immunity that is independent and mutually exclusive of Section 101.021 's waiver of immunity for premises-defect claims. As explained previously, Section 101.060 instead presumes a premises-defect claim for which immunity would be waived under Section 101.021 and modifies that waiver.[47] But to the extent Speer is asserting that his claims come within a different immunity waiver provided by Section 101.021,[48] that contention is unavailing.
*256 Speer's pleading labels are not singularly controlling-instead, it is the "real substance" of the claims that determines immunity and jurisdiction.[49] Speer makes no contention that motor vehicles (the focus of the first of the three categories of liability theories for which Section 101.021 waives immunity) had any role in his alleged injuries. As for the remaining two categories (a "use" or "condition" of tangible personal property versus premises defect), the Texas Supreme Court has held that a premises-defect claim for purposes of the TTCA, as with the common law, is distinguished by "a nonfeasance theory based on the owner's failure to take measures to make the property safe," focusing on injury from a "condition" of real property, as contrasted with "affirmative, contemporaneous conduct by the owner that caused the injury."[50] And this is true, the court has further reasoned, even if the injury-causing condition of real property was created by tangible personal property and thus in some sense could be said to involve a "use" or "condition" of that personal property. Accordingly, in its recent Sampson case, the supreme court held that a trip-and-fall claim arising from the allegedly negligent prior placement of an extension cord across a walkway was a premises-defect claim under the TTCA, and therefore subject to Section 101.022(a) 's licensee standard, rather than a claim arising from the "use" or "condition" of the extension cord.[51] In the court's view, only if the injury had been caused by contemporaneous "use" of the personal property at the time of injury (e.g., if Professor Sampson's fall had instead been caused by a UT employee contemporaneously pulling the extension cord taut),[52] or by a "condition" of the personal property "itself" (e.g., if Sampson had instead been shocked by exposed wires in the extension cord)[53] would the claim have been analyzed as anything other than a premises-defect claim.
In the course of its analysis, the Sampson court also observed that "both within and outside the [TTCA], [it] has consistently treated slip/trip-and-fall cases as presenting claims for premises defects."[54] It returned to that theme in its ultimate holdings, reasoning that:
*257 [T]he static placement of the extension cord on the real property, the way it was hung ... created the dangerous condition-a tripping hazard ... [and] thus created a condition on the real property-a premises defect. Just as at common law, where slip/trip-and-fall cases have consistently been treated as premises defect causes of action, under the [TTCA], when an item of tangible personal property creates a condition of real property that results in a slip/trip-and-fall injury, it is properly characterized as a premises defect cause of action.[55]
The same is true for Speer's claims here. His theory of recovery centers on the Commission's failure to remedy a preexisting tripping hazard that allegedly stemmed from the poor visibility and sagging height of the cable barrier. This is a paradigmatic premises-defect claim under both the common law and the TTCA.
It follows from the foregoing analysis that Speer can establish a waiver of immunity under the TTCA only by satisfying the licensee standard imposed by Section 101.022, Subsection (a) -including the element of the Commission's actual notice. Importantly, the Commission's actual notice must concern the existence of an unreasonably dangerous condition presented by the cable barrier (i.e., that it presented a tripping hazard) and not merely that the cable was sagging or reflectors were missing.[56] Speer's petition does not allege facts to establish or demonstrate the Commission's actual notice; instead, he focused on establishing mere constructive notice. The Commission also presented evidence that it had received no reports or complaints concerning issues with the cable barrier in Lot 27 or any tripping hazard prior to receiving notice of Speer's claims.[57]
In an attempt to raise a fact issue, Speer relies primarily on the testimony of Jefferson Ransom, the Commission employee who repaired the bollards after Speer gave notice of his claim. Ransom testified, in pertinent part, that at the time of the repairs the cable barrier had the remains of "temporary" reflective material that usually deteriorates within a year. He further testified that he did not observe any reflective material near the middle of the cable where Speer allegedly tripped. Ransom's testimony, at most, might support an inference that the Commission perceived or had previously perceived the need to place the reflective tape on the cable and that the materials could deteriorate. But the mere "fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition" or establish the required actual notice of a dangerous condition "at the time of the accident."[58] Speer's pleading and proof fall short of meeting his burden under the applicable licensee standard.
CONCLUSION
We reverse the trial court's order denying the Commission's plea to the jurisdiction and render judgment dismissing Speer's claim.

See Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) ("A person may appeal from an interlocutory order of a ... county court at law ... that ... grants or denies a plea to the jurisdiction by a governmental unit....").

See generally id. §§ 101.021-109 (TTCA).

See id. § 101.022(a); see also Sampson v. University of Tex. , 500 S.W.3d 380, 385-86 (Tex. 2016) (discussing this "heightened standard for premises defects").

See Tex. Civ. Prac. & Rem. Code §§ 101.022(b), .060(a)(2).

Speer presented as evidence below photographs depicting what he averred was the cable barrier's state at the time of his fall. Among these were photographs showing Speer standing beside the barrier and several taken at night from the perspective of Lot 27's interior looking northward toward the Capitol. Speer's counsel also employed the novel metric of cigarette lengths (roughly three) to quantify the sagging cable's height. Also in evidence were contrasting photographs showing the cable barrier following repairs made by the Commission after Speer gave notice of his claims.

See, e.g. , Houston Belt & Terminal Ry. Co. v. City of Houston , 487 S.W.3d 154, 160 (Tex. 2016) ; see also Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality , 307 S.W.3d 505, 515-16 & nn. 7 & 8 (Tex. App.-Austin 2010, no pet.) (emphasizing that facts are required, not mere legal conclusions).

See, e.g. , Sampson , 500 S.W.3d at 384 (observing that suits against State or its agencies implicate sovereign immunity from suit, depriving the trial court of subject-matter jurisdiction unless the State consents); see also City of El Paso v. Heinrich , 284 S.W.3d 366, 373-76 (Tex. 2009) (recognizing that claims having effect of seeking retrospective monetary relief from State implicate sovereign immunity even when not formally asserted directly against the State or its government).

Sampson , 500 S.W.3d at 384 (quoting Tex. Gov't Code § 311.034 ).

See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 701 (Tex. 2003) ("[W]e require the Legislature to express its intent beyond doubt and will construe ambiguities in a manner that retains the State's immunity.").

Sampson , 500 S.W.3d at 384 (quoting Texas Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 224 (Tex. 2004) (quoting Tex. Civ. Prac. & Rem. Code § 101.025(a) ) ); see Tex. Civ. Prac. & Rem. Code § 101.025(a), (b) (providing that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter" and that "[a] person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter").

See Tex. Civ. Prac. & Rem. Code § 101.021 ("A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."); see also Sampson , 500 S.W.3d at 387 (emphasizing that "it is important to remember that the [TTCA] does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist" against a private defendant (quoting City of Tyler v. Likes , 962 S.W.2d 489, 494 (Tex. 1997) ) ). Although Section 101.021 does not explicitly say so, the Texas Supreme Court has deduced that Subsection (2)'s waiver as to "a condition or use of ... real property" refers only to premises-defect claims, thereby corresponding to Section 101.022(a), a provision we will discuss momentarily. See Sampson , 500 S.W.3d at 384-85 ("a claim for condition or use of real property is a premises defect claim under the [TTCA]" (emphasis added) (citing Miranda , 133 S.W.3d at 230 ; State v. Tennison , 509 S.W.2d 560, 562 (Tex. 1974) ) ).

Tex. Civ. Prac. & Rem. Code § 101.022(a).

See, e.g. , State Dep't of Highways & Pub. Transp. v. Payne , 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g) (citing Tennison , 509 S.W.2d at 562 ); see also Sampson , 500 S.W.3d at 385 (recognizing that this "heightened standard for premises defects ... requires proof of ... actual knowledge").

Payne , 838 S.W.2d at 237 (citing Tennison , 509 S.W.2d at 561 ).

Sampson , 500 S.W.3d at 385.

Austin v. Kroger Tex., L.P. , 465 S.W.3d 193, 202 (Tex. 2015).

See Payne , 838 S.W.2d at 237.

See, e.g. , Harris Cty. v. Eaton , 573 S.W.2d 177, 180 (Tex. 1978).

See, e.g. , University of Tex. v. Hayes , 327 S.W.3d 113, 116 (Tex. 2010) (per curiam).

Tex. Civ. Prac. & Rem. Code § 101.022(b) ; see Eaton , 573 S.W.2d at 179-80 (holding that this exemption "was meant to enlarge liability in some instances by imposing the duty to warn where there was a special defect ... as in the case of the duty one owes an invitee").

Tex. Civ. Prac. & Rem. Code § 101.022(b).

See id. § 101.060; see also In re Texas Dep't of Transp. , 218 S.W.3d 74, 78 (Tex. 2007) (orig. proceeding) (holding, in context of venue dispute, that "section 101.060 acts only as a limitation on the government's waiver of immunity in some situations involving the absence, condition, malfunction or removal of a traffic device" and "does not create a cause of action separate and apart from a premises defect cause of action"); Texas Dep't of Transp. v. Ramming , 861 S.W.2d 460, 463-66 (Tex. App.-Houston [14th Dist.] 1993, no writ) (recognizing that "Sections 101.022 and 101.060, read together, establish the duty owed by the State to a plaintiff who sues under a premises liability claim involving a traffic signal" (emphasis original) ).

Tex. Civ. Prac. & Rem. Code § 101.060(a)(1).

Id. § 101.060(a)(3).

Id. § 101.060(a)(2).

See City of Austin v. Lamas , 160 S.W.3d 97, 101-03 (Tex. App.-Austin 2004, no pet.).

Compare Tex. Civ. Prac. & Rem. Code § 101.022(b), with id. § 101.060(a)(2).

See City of Grapevine v. Sipes , 195 S.W.3d 689, 694 (Tex. 2006) ; see also id. at 694-95 (observing that Subsection (a)(3) provides a similar "safe harbor" once government "corrects" removal of traffic device and that both provisions, in contrast with Subsection (a)(1) addressing initial placement of traffic devices, "presume a preexisting device" that has been rendered absent or deficient by intervening events).

See Texas Dep't of Transp. v. Garza , 70 S.W.3d 802, 806-07 (Tex. 2002) (so observing in context of holding that 45 mile-per-hour speed limit posted on sign, alleged to be too high for the location but which conveyed correct speed limit imposed by law, is not a "condition" of the sign within the meaning of Subsection (a)(2) ).

See Lorig v. City of Mission , 629 S.W.2d 699, 700-01 (Tex. 1982) (holding tree branches obstructing motorists' view of stop sign to be a "condition" for these purposes); see also Lamas , 160 S.W.3d at 99 (assuming the same in context of analyzing whether Subsection (a)(2)'s "notice" included constructive notice).

Indeed, the original version of the Commission's plea to the jurisdiction accepted the same characterization, although the Commission subsequently amended the plea to dispute that the cable barrier is a "traffic or road sign, signal, or warning device."

See, e.g. , TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011) ("We ... consider statutes as a whole rather than their isolated provisions [and] presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." (citations omitted) ); City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) (recognizing that courts are to use "any technical or particular meaning the words have acquired" in lieu of "plain and common meaning" when so defined or "apparent from [ ] context").

See, e.g. , State v. Shumake , 199 S.W.3d 279, 284 (Tex. 2006).

Sampson , 500 S.W.3d at 384 (quoting Tex. Gov't Code § 311.034 ).

Tex. Civ. Prac. & Rem. Code § 101.060(b).

Id. § 101.060(c).

Id. § 101.022(b).

Hayes , 327 S.W.3d at 116 (quoting Tex. Civ. Prac. & Rem. Code § 101.022(b) ).

See Denton Cty. v. Beynon , 283 S.W.3d 329, 331-32 (Tex. 2009) ("[A] court cannot 'classify as "special" a defect that is not like an excavation or obstruction on a roadway.' " (quoting Payne , 838 S.W.2d at 239 n.3 ) ); itation case-ids="9997605" index="47" url="https://cite.case.law/sw2d/838/235/#p237">id. at 331 n.11 (explaining that a condition "of the same class as an excavation or obstruction" would characteristically present "unexpected and unusual danger" to roadway users, although "unexpected and usual danger" is not an independent requirement or element of a special defect).

See, e.g. , Hayes , 327 S.W.3d at 117 (after holding that hazard was not special defect, considering whether immunity was waived under standard for ordinary premises defects).

See Payne , 838 S.W.2d at 238-39 & n.3 (identifying risk to the "ordinary users of roadways" as distinguishing criterion and holding that end of culvert from which claimant had fallen is not a special defect because it "was located far enough from the paved surface that vehicular passengers and other normal users of the roadway were unlikely to encounter it"); accord, e.g. , Hayes , 327 S.W.3d at 116-17 & n.1 (holding that a chain hanging across a campus service driveway, located behind a barricade, would not be a special defect (assuming without deciding the driveway was a "highway, road, or street") because area beyond barricade was not in "the normal course of travel"); Beynon , 283 S.W.3d at 331-32 (holding that floodgate arm into which motorist collided after losing control, located approximately three feet off roadway, is not a special defect because it did not present a threat in the normal course of travel on the road).

Texas Dep't of Transp. v. Perches , 388 S.W.3d 652, 655-56 (Tex. 2012) (per curiam).

See Ramos v. Texas Dep't of Pub. Safety , 35 S.W.3d 723, 733 (Tex. App.-Houston [1st Dist.] 2000, pet. denied) (reasoning that "section 101.060(a)(2) deals with traffic or road signs, signals, and warning devices ... [while] the present case deals with a parking lot, and thus section 101.060(a)(2) is not applicable").

See, e.g. , Sipes , 195 S.W.3d at 693-95 (addressing whether failure to initially install planned traffic signal at highway intersection constitutes an "absence" of the traffic signal under Subsection (a)(2) ); State v. Gonzalez , 82 S.W.3d 322, 327-30 (Tex. 2002) (addressing whether frequent vandalism of stop sign at highway intersection implicates a "condition" of a traffic sign under Subsection (a)(2) or third-party removal or destruction of sign under (a)(3) ); Garza , 70 S.W.3d at 806-08 (addressing whether level indicated on speed-limit sign implicates a "condition" of the sign under Subsection (a)(2) ); Alvarado v. City of Lubbock , 685 S.W.2d 646, 648-49 (Tex. 1985) (holding speed-limit sign conveying incorrect information to involve "condition" of the sign under Subsection (a)(2) ); Lorig , 629 S.W.2d at 700-01 (holding that tree branches obstructing view of stop sign at roadway intersection are a "condition" of the sign under predecessor to Subsection (a)(2) ); Sparkman v. Maxwell , 519 S.W.2d 852, 856-58 (Tex. 1975) (holding that turn signal in traffic light conveying inaccurate or confusing information is a "condition" of the signal).

This is true regardless of whether the relevant "roadway" (11th Street) also includes the adjoining sidewalk. See City of Austin v. Rangel , 184 S.W.3d 377, 383 (Tex. App.-Austin 2006, no pet.) (holding that a sidewalk was part of street for purposes of analyzing special defect).

See Perches , 388 S.W.3d at 655-56.

See In re Texas Dep't of Transp. , 218 S.W.3d at 78 ; Ramming , 861 S.W.2d at 463-66.

Cf. Ramming , 861 S.W.2d at 463-66 (while recognizing that "Sections 101.022 and 101.060, read together, establish the duty owed by the State to a plaintiff who sues under a premises liability claim involving a traffic signal," holding that neither provision governed where claimant had alleged injury from traffic collision attributed to State employee's contemporaneous negligence in shutting off power to traffic signal) (emphasis original).

See Texas Parks & Wildlife Dep't v. Sawyer Trust , 354 S.W.3d 384, 389 (Tex. 2011) (observing that "[t]he central test for determining jurisdiction" looks to whether "the 'real substance' of the plaintiff's claims" is within trial court's jurisdiction (citing Dallas Cty. Mental Health & Retardation v. Bossley , 968 S.W.2d 339, 343-44 (Tex. 1998) ) ); see also Miranda , 133 S.W.3d at 233 ("The [TTCA]'s scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property.").

Sampson , 500 S.W.3d at 388 (quoting Del Lago Partners, Inc. v. Smith , 307 S.W.3d 762, 776 (Tex. 2010), and citing Keetch v. Kroger Co. , 845 S.W.2d 262, 264 (Tex. 1992) ).

See ids="9997034" index="71" url="https://cite.case.law/sw2d/845/262/#p264">id. at 388-91.

See ids="9997034" index="72" url="https://cite.case.law/sw2d/845/262/#p264">id. at 390 (citing this scenario as illustrative " 'use' of the tangible personal property").

See ids="9997034" index="73" url="https://cite.case.law/sw2d/845/262/#p264">id. at 391 (citing this example as "an injury caused by a condition of the tangible property").

Id. at 386 (citing Hayes , 327 S.W.3d at 117 ; University of Tex. v. Aguilar , 251 S.W.3d 511, 512-13 (Tex. 2008) (per curiam); Brookshire Grocery Co. v. Taylor , 222 S.W.3d 406, 407-09 (Tex. 2006) ; Keetch , 845 S.W.2d at 263-64 ; Seideneck v. Cal Bayreuther Assocs. , 451 S.W.2d 752, 753-54 (Tex. 1970) ).

Id. at 391.

See, e.g. , Hayes , 327 S.W.3d at 117 (similarly distinguishing between actual knowledge merely that cable barrier had been placed across driveway and actual knowledge that cable presented unreasonably dangerous condition at time of injury).

See, e.g. , Miranda , 133 S.W.3d at 227-28 (explaining standard of review when plea to jurisdiction seeks to negate jurisdictional facts).

City of Dallas v. Thompson , 210 S.W.3d 601, 603 (Tex. 2006) (per curiam).