# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00083-CV

---

**City of Austin, Appellant**

**v.**

**Maria Furtado, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-005929, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The City of Austin appeals an order denying its plea to the jurisdiction in Maria Furtado's trip-and-fall, premises-liability suit. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). The City argued that governmental immunity barred the claims against the City and that Furtado failed to demonstrate a waiver of that immunity under the Texas Tort Claims Act. *See id.* §§ 101.001–101.109. The City contends that the trial court erred by denying the plea because: (1) the part of the sidewalk where Furtado fell was an ordinary defect and not a "special defect," *see id.* § 101.022(b); (2) the City conclusively proved its lack of actual knowledge of the alleged defect; and (3) there is no fact issue about whether the City had constructive knowledge of the alleged defect.

We conclude that the alleged defect was a special defect and that the undisputed evidence conclusively establishes that the City did not have actual knowledge of the defect. In

addition, we conclude that Furtado failed to plead facts affirmatively demonstrating constructive knowledge of the alleged defect but that the pleadings do not conclusively negate constructive knowledge. Because this is an issue of pleading sufficiency, we reverse and remand to afford Furtado the chance to cure this defect.

## BACKGROUND

In June 2016, Furtado tripped and fell on a deteriorated sidewalk along Airport Boulevard. Furtado sued the City and others not before us, alleging that her personal injuries arising from her fall were caused by a premises defect and that a crack and depression in the sidewalk constituted a special defect, or alternatively an ordinary defect, for which immunity is waived under the Act. *See id.* § 101.021(2) (governmental units are liable for personal injuries "caused by a condition . . . of . . . real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law").

In her live petition, Furtado alleges that the part of the sidewalk where she fell "was shattered and in complete disrepair" and includes the following picture:

*[The picture appears on the next page.]*

2



She further alleges that "the extent of the shattered sidewalk was hidden from view of pedestrians like [her] walking in [her] direction" and includes the following picture:



The City filed its plea to the jurisdiction, seeking dismissal of the claims against it because of governmental immunity and Furtado's failure to plead within a waiver of that immunity under the Texas Tort Claims Act, and attached evidence to the plea. Furtado filed a written response, attaching evidence of her own. After a non-evidentiary hearing, the court denied the plea, and the City now appeals.

**STANDARD OF REVIEW**

Municipalities, as political subdivisions of the State, are protected from suit by governmental immunity unless that immunity has been waived by the constitution or by state law. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). Governmental immunity, like sovereign immunity, implicates a court's subject-matter jurisdiction and may be properly asserted by a plea to the jurisdiction. *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 225. Therefore, when a government defendant challenges jurisdiction on the basis of immunity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Ryder Integrated Logistics*, 453 S.W.3d at 927.

When the defendant's plea to the jurisdiction challenges the sufficiency of the plaintiff's pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 226. In making this determination, we construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Texas Dep't of Crim. Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial

4

court's jurisdiction but do not contain incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should generally be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the opportunity to amend. *Id.* at 226. "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed de novo." *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts and those facts implicate the merits of a plaintiff's claim, as in this case, the party asserting the plea must overcome a burden similar to the movant's burden on a traditional-summary-judgment motion. *See Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.). To meet this burden, the defendant asserting the plea must present evidence to support its assertion, which then shifts the burden to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If there is a fact question about jurisdiction, the plea cannot be granted, and the fact question will be resolved by the factfinder. *See id.* at 227–28. But if the relevant evidence is undisputed or does not raise a fact question on jurisdiction, we rule on the plea as a matter of law. *See id.* at 228.

## BACKGROUND LAW

The Texas Tort Claims Act provides a limited waiver of governmental immunity for certain torts. *See* Tex. Civ. Prac. & Rem. Code § 101.025. In part, the Act expressly waives immunity for personal-injury claims arising from a premises defect, "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.022(a); *see Sampson v. University of Tex. at Austin*, 500 S.W.3d 380, 385–876 (Tex. 2016) (noting that

5

Act waives immunity for three categories of claims, when statutory requirements are met: (1) use of publicly owned automobile, (2) injuries arising out of a condition or use of tangible personal property, and (3) premises defects). When a premises-defect claim is asserted under the Act, the duty of care owed by the governmental unit depends on whether the condition is classified as an ordinary premises defect or as a special defect.

When a premises-defect claim involves an ordinary premises defect, the Act generally limits the duty owed by the governmental unit to what a private landowner owes a licensee. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a); *Texas Facilities Comm'n v. Speer*, 559 S.W.3d 245, 250 (Tex. App.—Austin 2018, no pet.). Under this standard, the claimant must prove that the governmental unit had *actual knowledge* of a dangerous condition and that it failed to use ordinary care to warn the licensee or make the condition reasonably safe.[1] *See City of Denton v. Paper*, 376 S.W.3d 762, 766 (Tex. 2012); *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). But when a claimant alleges that injuries were caused by a special defect, the governmental unit is held to a higher standard of care, the same as that owed by a private landowner to an invitee. *See* Tex. Civ. Prac. & Rem. Code § 101.022(b). A special defect is an unexpected and unusual danger to an ordinary user of a roadway or sidewalk, statutorily likened to excavations or obstructions. *See id.*; *Ybarra v. County of Hidalgo*, 362 S.W.3d 129, 133 (Tex. App.—San Antonio 2011, no pet.) (quoting *City of El Paso v. Chacon*, 148 S.W.3d 417, 423 (Tex. App.—El Paso 2004, pet. denied)). Under the invitee standard, the claimant may prove either the governmental unit's actual knowledge *or constructive knowledge* of the dangerous condition. *See*

---

[1] Under this standard, the governmental unit also owes a duty to not injure a licensee by willful, wanton, or grossly negligent conduct. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). Because Furtado did not allege that the City breached this duty, it is not an issue in this case.

*Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam) (citing Tex. Civ. Prac. & Rem. Code § 101.022(b)); *City of Austin v. Leggett*, 257 S.W.3d 456, 463 (Tex. App.—Austin 2008, pet. denied).

## ANALYSIS

### I. The part of the sidewalk where Furtado fell was a special defect.

In its first argument, the City contends that the part of the sidewalk where Furtado fell was not a "special defect." Whether an alleged defect is a special defect or an ordinary premises defect is a question of law reviewed *de novo*. *City of Austin v. Vykoukal*, No. 03-16-00261-CV, 2017 WL 2062259, at *3 (Tex. App.—Austin May 10, 2017, pet. denied) (mem. op.). The relevant statute does not define "special defect" but likens them to "conditions 'such as excavations or obstructions on highways, roads, or streets.'" *Texas Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (per curiam) (internal quotation omitted) (quoting *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam)); *see* Tex. Civ. Prac. & Rem. Code § 101.022(b). "A condition must therefore be in the same class as an excavation or obstruction on a roadway to constitute a special defect." *Perches*, 388 S.W.3d at 655; *see City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997) (per curiam) ("The examples in the statute are not exclusive, and courts are to construe 'special defects' to include defects of the same kind or class as the ones expressly mentioned in the statute."). Defects on a sidewalk may be within the class "because a sidewalk is sufficiently related to a roadway." *See City of Austin v. Credeur*, No. 03-19-00358-CV, 2021 WL 501110, at *3 (Tex. App.—Austin Feb. 11, 2021, no pet.) (mem. op.) (citing *City of Austin v. Rangel*, 184 S.W.3d 377, 383–84 (Tex. App.—Austin 2006, no pet.); *Chacon*, 148 S.W.3d at 423).

7

Deciding whether an alleged defect is within the special-defect class "is determined on a case-by-base basis." *Vykoukal*, 2017 WL 2062259, at *3 (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992)). We consider factors about the alleged defect like (1) its size, (2) whether it unexpectedly and physically impairs the ability to travel on the sidewalk, (3) whether it presents some unusual quality apart from the ordinary course of events, and (4) whether it presents an unexpected and unusual danger to ordinary users of the sidewalk. *See Hayes*, 327 S.W.3d at 116 (using similar factors for alleged roadway special defects); *Rangel*, 184 S.W.3d at 383 ("When determining whether a special defect exists, courts often look to factors such as the size, nature, location and permanence of the condition."); *see also City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam) ("This Court . . . has traditionally distinguished special defects by some unusual quality outside the ordinary course of events." (citing *City of El Paso v. Bernal* and *Roberts*)); *City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (per curiam) (holding that part of sidewalk was not special defect because it "was merely an eroded place in the flat surface of the sidewalk, certainly no more unexpected and unusual a danger than was the eroded step in *Roberts*"); *Roberts*, 946 S.W.2d at 843 (concluding that sidewalk step was not special defect because "the essential structure of the steps leading from the sidewalk to the street was not impaired" and, "[i]nstead, only portions of the lowest step showed some cracking and crumbling"). "Our special-defect jurisprudence turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Hayes*, 327 S.W.3d at 116 (quoting *Denton County v. Beynon*, 283 S.W.3d 329, 332 (Tex. 2009)).

On appeal, the City contends that based on the evidence before it, the trial court erred by concluding that the sidewalk crack constitutes a special defect. The City attached the following two pictures to its plea, among others: *[The pictures appear on the next two pages.]*

8





10

The City contends that these pictures "show[] that the most deteriorated parts of the sidewalk could be easily avoided, with ample area to traverse the sidewalk on the undamaged side." The City points out that "ordinary" or "usual" sidewalk cracking does not amount to a special defect, *see Hayes*, 327 S.W.3d at 116; *Bernal*, 986 S.W.2d at 611; *see also Paper*, 376 S.W.3d at 766 (contrasting "an abnormally large hole in the road," which was a special defect, with "common potholes or similar depressions in the roadway," which are not), and characterizes the sidewalk as only "cracked and partially[]depressed."

In contrast, Furtado characterizes the spot where she fell as a "sinkhole" that was "located where a pedestrian would normally walk and not expect to encounter it," as it was "hidden from the plain view of pedestrians like Ms. Furtado walking in Ms. Furtado's direction; that impaired the sidewalk's "essential structure"; and that was thus "within the same class" as excavations. To support these characterizations, Furtado relies on evidence that the City attached to its plea. It attached an affidavit by a specialist with its 311 Department, who recounted the facts underlying his search of City records of "all complaints and service request calls" to the Department about the sidewalk. The only such record in the Department's systems was a report created after Furtado's daughter called the City after Furtado fell, in which the Department recorded "a hole in the sidewalk" that was "3 FEET" in size and posed "a tripping hazard" and whose "nature of the problem" was "Sinking."

While both parties' characterizations of the sidewalk find some support in the record, the spot where Furtado fell resulted from sinking, according to the City's own evidence. Sinking ordinarily involves the subsiding or evacuation of some of the underlying ground, much like an "excavation[]" would. *See* Tex. Civ. Prac. & Rem. Code § 101.022(b). And in this instance, the sinking changed the "essential structure," *see Roberts*, 946 S.W.2d at 843, of the part

11

of the sidewalk where Furtado fell. Much like "[a]n average pedestrian would not expect to encounter a hole of this size on a downtown public sidewalk," *see Rangel*, 184 S.W.3d at 384, an average pedestrian would not expect to encounter a sunken area the size of the one depicted above, the depth of which was not readily apparent, on an urban, public sidewalk. Conditions can be special defects only if they pose a threat to ordinary users following the normal course of travel, *see Hayes*, 327 S.W.3d at 116, and the sinking here posed such a threat to ordinary pedestrians on this sidewalk. Based on Furtado's pleadings and the parties' evidence, we conclude that Furtado alleged a special defect.

## II. The City conclusively proved its lack of actual knowledge, and there is no fact issue about constructive knowledge, but Furtado could cure the constructive-knowledge defect by repleading.

As previously discussed, to prevail on her premises-defect claim for a special defect, Furtado must prove that the City either knew or should have known of the alleged defect in the sidewalk—that is, that the City had either actual or constructive knowledge. *See Speer*, 559 S.W.3d at 250; *Leggett*, 257 S.W.3d at 463; *see also* Tex. Civ. Prac. & Rem. Code § 101.022(b) (statutory limitation on governmental unit's duty owed as premises owner does not apply to special defects).

In its plea, the City sought to conclusively prove that it lacked actual knowledge of the alleged defect in the sidewalk where Furtado fell. It attached to its plea (1) the affidavit by the specialist with the City's 311 Department and (2) one by an engineer who "manage[s] the City's sidewalk repair program" for the Public Works Department.

The specialist recounted the facts underlying his "complete and thorough search of all complaints and service request calls made to the City . . . about any incident or report that

12

occurred on a sidewalk within a 250 foot radius of" the street address near where Furtado fell. The only such record that he found for any time between March 1, 2013, and February 13, 2018, was the report by Furtado's daughter after Furtado fell.

Similarly, in his affidavit, the engineer stated that he "conducted a complete and thorough search of all requested work orders for sidewalk repairs and/or concrete repairs for the sidewalk" where Furtado fell. His search encompassed all citizen complaints through 311, "water utility excavations," and "general Public Works projects." The search yielded "no records that indicate that the City . . . Public Works Department performed or was requested to perform any sidewalk/concrete repairs/work orders on the specific sidewalk area." The only records he found were for work performed because of Furtado's fall and for unrelated utility work two years before her fall in a spot about 200 feet from where she fell. About the City's knowledge of the alleged defect, the engineer said that "[d]ue to the tremendous area of sidewalks within the City, at the time of the subject incident the City . . . did not have a sidewalk inspection program, and instead relied on requests for service and complaints to the 311 system to know when sidewalk repairs were necessary."

Relying on these two affidavits, the City argued in its plea:

> Because the City did not receive any complaints or service requests for any sidewalk defects, sidewalk cracks, or sidewalk construction projects in the area prior to [the day Furtado fell] and did not complete any construction or work projects on the subject sidewalk, the City has competent evidence that conclusively show[s] the City did not have actual knowledge of this alleged dangerous condition.

In the face of these arguments and the City's evidence, Furtado did not offer any argument, or attach any evidence raising a fact issue, that the City had actual knowledge of the alleged defect. Instead, she argued that the alleged defect is a special defect, there are fact issues about

13

constructive knowledge, and she herself did not know about the defect because it was not open and obvious.[2]

Based on the undisputed jurisdictional evidence presented by the City, we conclude that the City conclusively negated its actual knowledge of the premises defect. Consequently, whether Furtado's claim survives the City's immunity turns on whether Furtado pleaded constructive knowledge.

A plaintiff can allege facts supporting constructive knowledge, *see Miranda*, 133 S.W.3d at 226–27, with facts showing either that the defendant caused the alleged defect to exist or that the alleged defect existed for so long that the defendant had a reasonable opportunity to discover it, *see Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992). For example, a plaintiff can show that the defendant would have discovered the alleged defect through the exercise of reasonable inspections after the alleged defect came into existence. *See CMH Homes*, 15 S.W.3d at 102–03. But in suits alleging injury caused by a deteriorating construction, the defendant's general knowledge that the construction will deteriorate and require repair or replacement does not necessarily mean that the defendant had constructive knowledge that the construction constituted a defect. *See id.* at 101.

In its appellate briefing, the City argues that even if this Court were to conclude that the alleged defect was a special defect, Furtado "cannot show that the City should have known of the defect." In support of this argument, it explains that it "cannot be reasonably expected to

---

[2] Proof of her own lack of knowledge of the alleged defect goes to a different element of a licensee's claim for an ordinary premises defect. *See Payne*, 838 S.W.2d at 237. An invitee need not prove that she did not know of the dangerous condition. *Id.*

14

have known about the sidewalk crack[] without a report or a pattern of reports in the area" and that there is no evidence of any such reports.

In response, Furtado argues[3]:

> The sinkhole didn't spontaneously appear moments before Ms. Furtado's call. Clearly, City Police Officers and Fire Fighters and Bus Drivers and myriad other employees passed by the sinkhole while it was a sinkhole and should have reported it. The fact that there are no actual records of such complaints may negate actual knowledge—but not constructive knowledge. That's a fact issue for the jury.

But in her live petition, Furtado only alleges that the City "had, at the very least, constructive notice of the dangerous condition posed by the shattered city sidewalk on which [she] fell" and does not allege any facts to support a reasonable inference that the City should have known of the defect.

In her response to the City's plea, Furtado asserted that fact issues exist about whether the City should have known of the alleged defect. But Furtado did not reference any evidence to support her assertion that the City had constructive knowledge. Nor does any of the evidence that the parties attached to their plea-to-the-jurisdiction filings speak to how long the sidewalk had been in the condition it was in when Furtado fell.

---

[3] In addition, Furtado argues that the City did not challenge constructive knowledge in the proceedings below and may not advance this argument for the first time on appeal. *See* Tex. R. App. P. 33.1 (preservation rule). But the City replies that we may take up the argument because it implicates subject-matter jurisdiction. *See, e.g.*, *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties."). The City is correct: its constructive knowledge—whether it should have known of the alleged special defect—can be raised for the first time on appeal. However, "[w]hen a defendant raises a jurisdictional argument for the first time on appeal, remand may be appropriate to afford the plaintiff a 'fair opportunity to address' the jurisdictional argument." *Harris County v. Annab*, 547 S.W.3d 609, 616 (Tex. 2018) (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012)).

15

Put simply, there is no allegation in Furtado's live pleading, and no evidence in the record, from which a reasonable inference could be drawn that the City should have known about the alleged special defect before Furtado fell. Because neither the factual allegations in Furtado's live petition nor the evidence attached to the plea filings raised a fact issue on either actual knowledge or constructive knowledge, the City's plea may be decided as a matter of law. *See Miranda*, 133 S.W.3d at 228.

However, this jurisdictional defect as to constructive knowledge is one that Furtado could cure by repleading. *See id.* at 226 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend."). We thus reverse the trial court's order and remand to give Furtado the chance to replead.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction and remand for further proceedings consistent with this opinion.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Triana, and Kelly
  Concurring and Dissenting Opinion by Justice Triana

Reversed and Remanded

Filed: December 31, 2021

16