# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00281-CV

**City of Austin, Appellant**

**v.**

**Olga Rangel, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN300808, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## O P I N I O N

The City of Austin appeals the district court's order denying its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2005). The City asserts that sovereign immunity bars the negligence claims of the appellee, Olga Rangel. Rangel sued the City after she was injured on a public sidewalk by stepping into an uncovered water meter box. She alleged both premise and special defects under the Texas Tort Claims Act (the "Act"). *See id*. § 101.022 (West Supp. 2005). The City argues that, whether or not the open meter box constituted a premise defect or a special defect, the district court erred in denying its plea to the jurisdiction. We hold that Rangel failed to establish a waiver of the City's immunity under the Act because she did not controvert the City's evidence negating the existence of jurisdictional facts in order to raise a fact issue regarding whether the City knew or should have known of the open meter box. Accordingly,

we reverse the district court's order denying the City's plea to the jurisdiction and dismiss Rangel's claims for lack of subject-matter jurisdiction.

**BACKGROUND**

In 2002, Olga Rangel and her husband attended a festival in downtown Austin. Walking to the event, they came to a blocked street. According to their affidavits, a uniformed police officer directed them to the sidewalk. Rangel subsequently stepped into an uncovered water meter box on the sidewalk.[1] She had not noticed the hole, nor had she seen any warning signs in the area. Rangel suffered injuries to her knee and ankle that required surgery.

After her fall, a nearby police officer was summoned and Rangel was taken away by an EMS unit. Rangel's husband heard the police officer say that the meter box should have been covered and saw him place an orange cone over the hole. When Rangel's husband returned later that day, the cone had been replaced by an oversized lid. The next day, he found the appropriate lid had been placed over the meter box. However, a City official stated in his deposition that he had not become aware that the meter box was missing its lid until nearly two months after the incident.

In her third amended petition, Rangel alleged that the open meter box constituted either a premise defect or a special defect. The City filed an amended plea to the jurisdiction and reply, denying that either defect existed and asserting that Rangel's pleadings had not established a waiver of the city's sovereign immunity under the Act. The City explained that it had not been

---

[1] The evidence in the record establishes that the uncovered meter box on the sidewalk was an eleven-inch opening that was located twenty feet from the curb and two feet from the building adjacent to the sidewalk.

2

actually aware of the missing lid at this location, nor would it be reasonable to require the City to be aware of the condition of every meter box at all times.

The City maintains over 300,000 public-works lids and covers in Austin. Rather than routinely inspecting lids and covers for problems, the City relies on reports by personnel working on infrastructure or reading meters, and on a citizen emergency hotline. When a broken or missing lid is reported, the standard dispatch time is thirty minutes and the standard time to fix the problem is two hours. On the street where Rangel fell, there had been twenty-six service requests in 2002; the standard dispatch time was met ninety-five percent of the time and the standard repair time was met seventy-seven percent of the time. Out of the fifty-six service requests on this street between 2000 and 2002, only two related to the block where Rangel fell, and neither request concerned a broken or missing lid.

The City noted that the open box Rangel stepped into contained a meter that was not in service at the time. During the festival and the days preceding it, the City did not receive any service requests or reports of problems concerning the block where the meter box was located. The City denied that the presence of a police officer near the scene established that the City knew or should have known of a problem. Moreover, the City asserted that requiring routine inspection of public-works lids and covers would be an unreasonable and insurmountable burden.

After a hearing, the district court denied the City's plea to the jurisdiction. The City now brings this interlocutory appeal.

**STANDARD OF REVIEW**

A city's sovereign immunity from suit deprives a district court of subject-matter jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004).

Thus, a city properly raises the issue by a plea to the jurisdiction. *See id*.[2] A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff has the burden of alleging facts to affirmatively demonstrate that the district court has jurisdiction. *Miranda*, 133 S.W.3d at 226; *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect on the face of the pleadings, making it impossible for the plaintiff to amend its petition in order to confer jurisdiction on the district court. *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 624 (Tex. App.—Austin 2005, pet. denied).

We review a denial of a plea to the jurisdiction *de novo*. *See Miranda*, 133 S.W.3d at 226. We do not look at the merits of the case but construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Texas Ass'n of Bus.*, 852 S.W.2d at 446; *City of Austin v. Lamas*, 160 S.W.3d 97, 100 (Tex. App.—Austin 2004, no pet.). If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one

---

[2] In his dissenting opinion, Justice Scott Brister strongly criticizes the use of pleas to the jurisdiction in governmental immunity cases, especially when "deciding the jurisdictional questions bears a strong resemblance to deciding the merits." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 239, 243 (Tex. 2004) (Brister, J., dissenting). This is such a case, and an attack on the element of a tort claim would seem to be the subject of a motion for summary judgment rather than a plea to the jurisdiction. Justice Brister advocates the use of special exceptions or motions for summary judgment, rather than pleas to the jurisdiction, to assert governmental immunity because "[i]t would make government entities rather than trial judges decide whether the jurisdictional challenge is directed to the plaintiff's pleadings or the underlying facts." *Id.* at 244. The district court below agreed and suggested that the City should proceed on motion for summary judgment; however, we are bound by the supreme court's opinion in *Miranda*.

4

of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider evidence necessary to resolve the jurisdictional issues, just as the district court is required to do. *See Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555). When the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence shows a fact question regarding the jurisdictional issue, the district court may not grant the plea to the jurisdiction. *Id.* at 227-28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the district court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

In *Miranda*, the supreme court recognized that a trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts "mirrors" that of a traditional summary judgment. *Id.*; Tex. R. Civ. P. 166a(c). The *Miranda* court explained, "By requiring the state to meet the summary judgment standard of proof . . . we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Miranda*, 133 S.W.3d at 228 (quoting *Bland*, 34 S.W.3d at 554). Under this procedure, the burden is on the defendant to put forth evidence establishing as a matter of law that the trial court lacks subject-matter jurisdiction. *Id.*; Tex. R. Civ. P. 166a(c). The burden then shifts to the plaintiff to demonstrate that there is a disputed issue of material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. The defendant cannot simply deny

5

the existence of jurisdictional facts and force the plaintiff to raise a fact issue. *See* Tex. R. Civ. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).

## DISCUSSION

The City argues that its sovereign immunity has not been waived under the Act because there is no issue of material fact regarding whether it had actual or constructive knowledge that the offending meter box lid was missing, and it is not reasonably possible to inspect every public-works lid at all times for problems. We first address the threshold question of whether the open meter box constituted a premise or special defect. After determining what kind of defect was involved, we will address whether the City established that it did not know and should not reasonably have known of the condition.

**Premise versus Special Defect**

Under the Act, a governmental unit's immunity to suit is waived to the extent that the Act creates liability. Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a) (West 2005); *State ex. rel. State Dep't of Highways & Pub. Transp. v. Gonzales*, 82 S.W.3d 322, 326 (Tex. 2002). A governmental unit may be liable for personal injuries caused by a condition of real property if the governmental unit would, were it a private person, be liable under Texas law. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(West 2005). The governmental unit's standard of care depends on whether the condition is classified as a premise defect or a special defect. *Id*. § 101.022; *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

If a premise defect existed, the City owed Rangel the same duty that a private landowner owes a licensee. *See Payne*, 838 S.W.2d at 237 (citing Tex. Civ. Prac. & Rem. Code

6

Ann. § 101.022(a)). That duty requires the City to not injure a licensee by willful, wanton or grossly negligent conduct; the City must use ordinary care to warn a licensee, or to make reasonably safe a dangerous condition of which the City is aware of and the licensee is not. *See id.* If instead the condition was a special defect, the City is treated as a private landowner and Rangel as an invitee. *See id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b)). With respect to an invitee, the City owes a higher duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the City is or reasonably should be aware. *See id.*

The determination of whether a condition is a special defect is a question of law for the court to decide. *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997); *Payne*, 838 S.W.2d at 238. Special defects include "defects such as excavations or obstructions on highways, roads, or streets." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). The statute's list is non-exclusive, but courts limit special defects to the kind or class of conditions in the statute. *See Harris County v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978).

Generally, special defects satisfying the statute "present an unexpected and unusual danger to ordinary users of roadways." *Payne*, 838 S.W.2d at 238. When determining whether a special defect exists, courts often look to factors such as the size, nature, location and permanence of the condition. *See City of Grapevine*, 946 S.W.2d at 843 (crumbled and cracked sidewalk steps not special defect); *Payne*, 838 S.W.2d at 239 (culvert too far from road to be encountered by normal users of roadway); *Eaton*, 573 S.W.2d at 179-80 (abnormally large hole in highway was special defect); *Harris County v. Smoker*, 934 S.W.2d 714, 718-19 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (longstanding, routine, or permanent conditions are not special defects).

7

A special defect need not be on the surface of the road itself. *See Payne*, 838 S.W.2d at 239 n.3. However, the condition must be sufficiently "related to the street" to constitute a special defect. *See*, *e.g.*, *City of El Paso v. Chacon*, 148 S.W.3d 417, 422-23 (Tex. App.—El Paso 2004, pet. denied) (analyzing status of sidewalk). In *Chacon*, the court determined a sidewalk was sufficiently related to the street because pedestrians wanting to walk up or down the street were required to use the sidewalk. *Id*. at 423. In addition, the transportation code defines a sidewalk as "*the portion of the street* that is between a curb or lateral line of a roadway and the adjacent property line and is intended for pedestrian use." Tex. Transp. Code Ann. § 541.302(16) (West 2005) (emphasis added); *Chacon*, 148 S.W.3d at 423.

A special defect does not have to be "specially created" by the governmental unit. *See Eaton*, 573 S.W.2d at 179 (analyzing former Act). In *Eaton*, the supreme court noted that the statute governing special defects expressed no such requirement. *See id*. Using the example of an avalanche blocking a mountain road, the Court explained that "[w]hether created by the governmental unit, by natural forces or by a third persons, the dangerous condition on the roadway is the same." *Id*. at 180.

In this case, the plea to the jurisdiction evidence shows that the uncovered meter box on the sidewalk was an eleven inch opening that was located approximately twenty feet from the curb and two feet from the building adjacent to the sidewalk. There is no evidence of who removed the meter's lid or for how long it had been missing before Rangel was injured.

A normal user of the roadway in this situation would be a pedestrian on the sidewalk, as Rangel was at the time she stepped into the open meter box. An average pedestrian would not expect to encounter a hole of this size on a downtown public sidewalk. Consequently, we hold that

8

the uncovered meter box was a special defect of the kind and class covered by the Act and that it posed an unexpected and unusual danger to ordinary users of the sidewalk. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *Payne*, 838 S.W.2d at 238.

**Waiver of Sovereign Immunity**

The City argues that Rangel does not allege a cause of action falling within the Act's waiver of sovereign immunity. Sovereign immunity is waived if Rangel's pleadings and factual allegations, taken as true, demonstrate that the City may be liable for her injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.022(b), 101.025; *Miranda*, 133 S.W.3d at 226. To establish liability for a tort claim arising from a special defect under the Act, a plaintiff must show that (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *Payne*, 838 S.W.2d at 237. The City contends that the evidence in the record demonstrates as a matter of law that it did not know nor should it have known about the open meter box.

There may be a fact issue regarding a city's actual or constructive knowledge of a special defect if the condition existed for a substantial period of time. *See, e.g.*, *Eaton*, 573 S.W.2d at 180; *Chacon*, 148 S.W.3d at 426. The supreme court has recognized that the element of notice can also be satisfied by establishing that the governmental unit created the condition. *See Eaton*, 573 S.W.2d at 180. For example, a plaintiff may sufficiently allege jurisdiction under the Act by pleading that the city installed a device and then removed it, creating the defect. *See Chacon*, 148 S.W.3d at 426.

In its plea to the jurisdiction, the City challenged Rangel's allegation that it knew or should have known of the offending meter box, an essential element of a tort claim arising from a special defect. In addition, the City submitted evidence that (1) it would be impossible for it to routinely inspect over 300,000 meter boxes in its jurisdiction; (2) it relies on reports by personnel reading meters and on a citizen hotline to learn of problems; (3) it has a standard dispatch time of thirty minutes and a standard repair time of two hours in response to such a report; and (4) it had received no report between 2000-02 of a missing lid in the block where Rangel fell. Rangel did not controvert this evidence.

We recognize that establishing actual knowledge of a missing meter box lid is extremely onerous because of the possibility that the lid was removed by parties other than the City. However, a fact issue regarding whether a governmental entity should have known about the missing lid could exist if a plaintiff alleged facts indicating that the lid had been missing for a long time. Here, Rangel did not allege any facts suggesting that the lid had been missing for a substantial period of time, and the record does not contain any evidence supporting such an allegation. Nor did she allege that the City had constructive knowledge because it created the defect.

Rangel pleaded that the City "knew or reasonably should have known of the condition" and that "a reasonable and careful inspection by [the City] would have revealed the condition." The attached affidavits of the Rangels establish that a police officer directed them to the sidewalk where the injury occurred and that this police officer was approximately a block away from the open meter box. Mr. Rangel detailed how a plastic cone was placed over the box after his wife's injury and how the hole was first covered with an oversized lid and then covered with the appropriate lid by the next day.

The mere presence of a police officer directing pedestrians away from a blocked street and onto the abutting sidewalk does not impart to the City actual knowledge of the open meter box a block away, nor does it demonstrate that the City reasonably should have known of the condition. Without any other facts connecting the officer to the dangerous condition before Rangel's injury occurred, the officer's presence directing pedestrians does not impart notice of the defect to the City. Rangel's husband's affidavit about when the lid was replaced after Rangel's injury adds nothing to the analysis of what the City knew or should have known before Rangel stepped into the hole.

There is no evidence in the record about how long the meter's lid had been missing, or who or what caused it to go missing. During the festival, and in the days preceding it, the City stated that there had been no service requests or citizen reports concerning meter boxes in the block where the injury occurred. The meter in question was not in service at the time, eliminating regular reports from meter readings. Moreover, in the previous two years there had been only two service requests concerning that block, none of which related to a broken or missing lid.

It is not reasonable to conclude that the City should have been aware of this particular open meter box without any specific reports or a pattern of reports in that area. This is not a situation in which the City should have known about the defect because it created the condition. Moreover, with nothing showing how long the lid had been missing, it is impossible to conclude that inspections at any given interval would have revealed the condition or made it reasonable for the City to have known about it.

Because Rangel failed to controvert the City's evidence and raise a fact issue regarding the City's knowledge of the special defect, she has not established a cause of action under the Act and the district court lacked subject-matter jurisdiction.

11

## CONCLUSION

Because Rangel is required to raise a fact issue regarding whether the City knew or should have known about the open meter box in order to establish a waiver of the City's sovereign immunity under the Act, the district court was without subject-matter jurisdiction. We reverse the denial of the plea to the jurisdiction and dismiss Rangel's action for lack of subject-matter jurisdiction.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Reversed and Dismissed

Filed:   January 20, 2006