**AFFIRMED; Opinion Filed December 6, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01056-CV

### AZHAR S. ZAIDI, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF AMMAR ZAIDI, DECEASED, Appellant
### V.
### NORTH TEXAS TOLLWAY AUTHORITY, Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-10570**

## MEMORANDUM OPINION
Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

This is an interlocutory appeal from a wrongful death case Azhar S. Zaidi filed against the North Texas Tollway Authority (NTTA) and Taion Rahaad Tolbert[1] after the vehicle Zaidi's son Ammar was driving collided with a downed light pole on the Tollway. The trial court granted NTTA's plea to the jurisdiction based on governmental immunity. In two issues, Zaidi contends the trial court erred by denying his motion for continuance and granting NTTA's plea. For the reasons that follow, we affirm the trial court's order.

---

[1] Tolbert is not a party to this appeal.

## BACKGROUND

On January 30, 2016, Tolbert was traveling north on the Tollway near the exit for Northwest Highway when his vehicle veered to the right and off the roadway, striking a light pole. The light pole fell into the center and outside northbound lanes of the roadway. Ammar Zaidi was traveling in the center lane of northbound lanes of the Tollway about two minutes after Tolbert's crash and struck the downed light pole. Ammar died as a result of the collision.

Zaidi sued Tolbert and the NTTA in October 2016. NTTA filed a plea to the jurisdiction in May 2017 asserting governmental immunity for Zaidi's clams. NTTA supported its plea with the following: (1) evidence regarding the design and construction of the relevant portion of the Tollway, including the light poles, (2) affidavits from two NTTA engineers, (3) maintenance and inspection records for the light pole, (4) Texas Department of Public Safety crash reports, and (5) records from the NTTA Safety Operations Center from the date of the accident. Although Zaidi filed a responsive brief, he did not present any evidence to controvert NTTA's plea. Zaidi did, however, file a motion for continuance to conduct additional discovery. After a hearing, the trial court denied Zaidi's motion and granted NTTA's plea. The trial court then severed Zaidi's claims against NTTA from his claims against Tolbert. This appeal followed.

## ANALYSIS

### A.       Motion for Continuance

We begin our discussion with Zaidi's complaint that the trial court erred by denying his motion for continuance to conduct more discovery. Zaidi filed his motion on July 21, 2017, five days before the hearing on NTTA's plea to the jurisdiction and over nine weeks after NTTA had filed its plea. We review the trial court's ruling on a motion for continuance to allow for additional discovery for an abuse of discretion. *See Patten v. Johnson*, 429 S.W.3d 767, 776 (Tex. App.—Dallas 2014, pet. denied). A trial court abuses its discretion when its ruling is so arbitrary and

unreasonable as to amount to a clear and prejudicial error of law. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). Nonexclusive factors to consider in in our analysis include the length of time the case has been on file, the materiality and purpose of the requested discovery, and whether the party seeking the continuance has exercised due diligence in obtaining the discovery sought. *See id.* Moreover, when a continuance is sought to pursue additional discovery, the motion must describe the evidence sought, explain its materiality, and show the party requesting the continuance has used due diligence to obtain the evidence. *See Wal-Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet. denied).

In his continuance motion, Zaidi generally asserted he needed additional time "to conduct discovery and gather evidence that supports the court's jurisdiction." Specifically, he asserted he wanted to take the depositions of the two NTTA engineers that provided affidavits in support of NTTA's plea. Zaidi indicated the affidavits indicated a problem existed with the subject light pole in 2002 and that annual inspections of the pole were completed. Zaidi contended he needed more information to determine what problems existed in 2002, and what the inspections revealed. He also asserted the affidavits revealed a potential responsible third party.

Initially, we note that our review of the affidavits does not support Zaidi's contention that a problem existed with the light pole in 2002. Moreover, although one affiant indicated NTTA also hires engineering consultants to perform inspections of the Tollway on an annual basis, this statement does not support Zaidi's contention of a potential responsible third party. At the July 26 hearing on the motion, Zaidi conceded that his motion did not outline his due diligence effort to obtain the discovery requested. When asked by the trial court, Zaidi's counsel could not confirm whether he had attempted to notice the depositions of the NTTA since receiving the May 17 plea. Based on the record before us, and considering the factors above, we cannot conclude the trial court abused its discretion in denying Zaidi's motion for continuance. In reaching our conclusion,

we necessarily reject Zaidi's contention raised for the first time in his reply brief that NTTA never provided responses to his requests for disclosure served with the October 16 original petition. Because Zaidi did not present this ground to the trial court as a basis for his continuance motion, we will not consider it as a basis to reverse the trial court's ruling.[2] *See* TEX. R. APP. P. 33.1. We therefore resolve this issue against Zaidi.

## B.      Plea to the Jurisdiction

Where, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). As the plaintiff, Zaidi bears the burden to allege facts demonstrating jurisdiction and we construe the pleadings liberally in his favor. *See id*. at 226. If the evidence before the court raises a fact issue with respect to jurisdiction, the plea must be denied and the issue resolved by the fact finder. *Id*. at 227–28. If, however, the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id*. at 228. Our review of the trial court's ruling on a plea to the jurisdiction is de novo. *Id*. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See id*.

A governmental entity such as NTTA is generally immune from suit unless the immunity is waived by the Legislature. *See City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). The Texas Tort Claims Act, provides a limited waiver of immunity for claims arising from a condition or use of real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011).

In its plea, NTTA asserted Zaidi's premises defect or special defect claims necessarily failed to trigger the waiver of immunity provisions under section 101.021 of the Act because, among other things, NTTA lacked the requisite knowledge of the alleged defect and Zaidi could

---

[2] The record does not show Zaidi ever brought this issue to the trial court by motion to compel or otherwise.

not establish NTTA failed to use ordinary care to protect Ammar from danger. On appeal, Zaidi contends the downed light pole was either a premises defect or special defect of which the NTTA has long been aware and should have protected against. Zaidi also complains NTTA failed to maintain or inspect the pole.

The Act imposes different standards of care depending on whether the condition is a premises defect or a special defect. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (West 2011). When a claim arises from a premises defect, the governmental entity owes only the duty applicable to licensees, namely, not to injure by willful, wanton, or grossly negligent conduct and to use ordinary care to warn or make safe a dangerous condition of which the governmental entity is aware and the claimant is not. *See City of Austin. v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.). If the condition is a special defect, however, the governmental entity owes the duty applicable to an invitee, that is, the governmental entity must use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of which it is or reasonably should be aware. *See id.*

The Act does not specifically define a "special defect" but references conditions "such as excavations or obstructions of highways, roads, or streets." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). Therefore, a condition must be in the same class as an excavation or obstruction on a roadway to constitute a special defect. *See Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam). The class of conditions intended by the statute has been described as those which, because of their size or some unusual quality outside the ordinary course of events, pose an unexpected and unusual danger to ordinary users of roadways. *See City of Lancaster v. LaFlore*, No. 05-17-01443-CV, 2018 WL 4907843, at *3 (Tex. App.—Dallas Oct. 10, 2018, no pet. h.).

Assuming without deciding that the downed light pole constituted a special defect, the evidence in the record before us is undisputed that there were only two minutes between the time Tolbert crashed into the light pole, causing it to fall into the roadway, and the time Ammar's vehicle collided with the downed pole. The evidence is also undisputed that NTTA first became aware of the downed pole through a Call for Service Report through 9-1-1 calls routed to NTTA's Safety Operation Center about one minute after Tolbert crashed into the pole. Considering the almost simultaneous creation of the special defect and Ammar's collision, there is no evidence from which to create a fact issue as to whether NTTA should have been aware of the downed pole earlier or whether NTTA failed to use ordinary care to protect Ammar from colliding with the downed pole.

Moreover, to the extent Zaidi characterizes his claim as a premises defect,[3] NTTA presented uncontroverted evidence that NTTA did not have actual knowledge of any dangerous condition caused by the light pole before Tolbert crashed into it causing it to fall into the roadway nor did NTTA have actual knowledge of the dangerous condition caused by the fallen poll until almost simultaneously when Ammar struck it. As noted above, to sustain a premises defect claim under the Act, actual, not constructive, knowledge of the dangerous condition is required. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–16 (Tex. 2008) (actual knowledge requires knowledge that the dangerous condition existed at the time of accident, as opposed to constructive knowledge which can be established by evidence that dangerous condition could develop over time).

An affidavit from an NTTA senior corridor manager stated the original 1965 engineering report that set the design standards for construction of the original portion of the Tollway as well

---

[3] In his live pleading, Zaidi bases his premises defect claim on the NTTA's alleged negligence in "failing to replace, maintain and/or upgrade or properly guard the light pole" and NTTA's "negligen[ce] in the inspection and maintenance of the light pole thereby making it unsafe and increasing the likelihood of the light pole falling."

as the 1966 "as built" construction plans included specifications of the design placement and materials used with respect to the light poles, including the light pole at issue. Moreover, the manager's review of the records regarding any rehabilitation, major repair, or improvement projects revealed that there was no indication that the light pole at issue was affected by any rehabilitation, major repair, or improvement project since the late 1960s. He further indicated, based on his review of historical records and photographs, the downed light pole was consistent with the light poles originally installed in the late 1960s.

The affidavit of the NTTA's director of system and incident management stated that NTTA regularly reviews the condition of the Tollway's facilities, including light poles, through spot checks along randomly selected portions of the Tollway to assess whether maintenance is required, and the most recent annual inspection on the light pole in question occurred five months before the crash, in August 2015, and revealed no maintenance issues or defects. According to the director, the most recent spot check of the area containing the subject light pole likewise revealed no maintenance issues or defects. His review of maintenance records dating back to 2002 regarding the relevant portion of the Tollway section also revealed no maintenance issues or defects regarding the downed pole. Additionally, he stated that prior to the accident, the NTTA "received no reports of injuries caused by or similar problems regarding the light pole at issue."

Zaidi, on the other hand, presented no evidence that the NTTA actually knew of a dangerous condition of the pole that created an unreasonable risk of harm to Ammar before it received reports that the pole was obstructing the roadway—reports that were received virtually at the same time Ammar collided with the pole. Moreover, actual knowledge requires proof that NTTA knew of the dangerous condition that caused the injury, not just evidence that NTTA was aware of a related condition that may create a danger at some time in the future. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006) (unreasonably dangerous condition for

which premises owner may be liable is condition at time and place injury occurs, not some antecedent situation producing condition).  Because the record reflects that NTTA did not have actual knowledge of any dangerous condition caused by the pole until one minute before Ammar collided with it, we conclude the evidence here fails to create a jurisdictional fact question about whether the NTTA had actual knowledge regarding its premises-defect claim.  The Act therefore does not waive the NTTA's immunity from Zaidi's premise defect claim.  We resolve this issue against Zaidi.

## CONCLUSION

On the record of this case, we conclude the trial court did not err in denying Zaidi's motion for continuance or by granting NTTA's plea to the jurisdiction.  Accordingly, we affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE


171056F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AZHAR S. ZAIDI, INDIVIDUALLY AND
AS REPRESENTATIVE OF THE
ESTATE OF AMMAR ZAIDI,
DECEASED, Appellant

No. 05-17-01056-CV          V.

NORTH TEXAS TOLLWAY
AUTHORITY, Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-10570.
Opinion delivered by Justice Evans,
Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the trial court's order granting appellee's plea to the jurisdiction and dismissing with prejudice appellant's claims for lack of subject matter jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee North Texas Tollway Authority recover its costs of this appeal from appellant Azhar S. Zaidi, Individually and as Representative of the Estate of Ammar Zaidi, Deceased.

Judgment entered this 6th day of December, 2018.