# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-19-00358-CV

The City of Austin, Appellant

v.

Brandy Credeur, Appellee

---

FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
NO. 18-0786-C26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

---

## MEMORANDUM OPINION

After she was injured walking along a sidewalk in front of Linda Riedel's house, appellant Brandy Credeur sued appellee the City of Austin, along with Riedel and Corix Utilities, neither of whom is a party to this appeal. Credeur asserted a claim for premises defect under the Texas Tort Claims Act (the Act) against the City. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001-.109. The City filed a plea to the jurisdiction, which the trial court denied. The City then filed this interlocutory appeal. *See id.* § 51.014(a)(8) (allowing interlocutory appeal from order granting or denying governmental unit's plea to jurisdiction). We reverse the trial court's denial of the plea to the jurisdiction and render judgment dismissing Credeur's claim against the City.

## BACKGROUND

Credeur alleged that she was injured while "walking over property owned and/or maintained by" the City, explaining that when she stepped off a sidewalk to cross the street, she

stepped on a cement block covering a pipe and then onto an "adjacent, improperly sealed water valve cover," both of which were obscured by Riedel's "overgrown lawn." Credeur "lost her balance from stepping on the cement block, landed on the improperly sealed water valve cover, attempted to regain her balance but was unable to do so and fell," breaking her arm in the fall. Credeur alleged that Riedel had "placed the cement block over the pipe due to the missing cover," that the cover "had been missing for some time," and that Riedel had complained to the City about the cover. Credeur sued the City for negligence, asserting it had failed to use ordinary care in "one or more of the following ways": creating, maintaining, failing to remedy, or failing to warn of a hazardous condition; or creating, maintaining, or failing to warn of a special defect. She pled both that the trial court had jurisdiction over her claims under section 101.021 of the Act, which provides a waiver of immunity for injury "caused by a condition or use" of real property,[1] and that the defect that caused her fall constituted a special defect.[2]

The City filed a plea to the jurisdiction, arguing: (1) that the alleged defect was not a special defect but was instead an ordinary premises defect, and (2) that the City could be held liable for such a defect only if it had actually knowledge of it before the accident. The City asserted that it had "competent evidence" that it lacked actual knowledge of the defect, explaining that it had found no results when it searched its databases for reports made to the City's 3-1-1 telephone line or mobile application related to a valve cover or cement block on or near the sidewalk, for any valve-cover-related work orders or service requests at the location, and

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 101.021(2) (governmental unit is liable for injury or death caused by "condition or use of tangible personal or real property," if governmental unit would be liable if it were private person).

[2] *See id*. § 101.022(b) (if claim arises from premises defect and claimant did not pay for use of premises, governmental unit's duty is that owed to licensee on private property, but that limitation does not apply to duty to warn of special defects on highways, roads, or streets).

2

for any service requests at the address made to Austin Water. Because it had no knowledge of the defect before the accident, the City argued, Credeur's claim was barred by governmental immunity. The trial court held a hearing on the City's plea and later signed an order denying the plea. This appeal followed.

## STANDARD OF REVIEW AND APPLICABLE STATUTES

A trial court's subject-matter jurisdiction is a question of law that we review de novo. *Sampson v. University of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016). Our review generally "mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* (quoting *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). If the governmental unit challenges the plaintiff's factual allegations and provides supporting evidence negating jurisdiction, the plaintiff must raise a genuine issue of material fact on the issue. *Id.* (quoting *Miranda*, 133 S.W.3d at 221). "When the evidence submitted to support the plea implicates the merits of the case, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.*

"Generally, 'immunity from suit implicates courts' subject-matter jurisdiction' for lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit." *Id.* (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)); *see Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 759 (Tex. 2011) ("The City, as a political subdivision of the state, is entitled to governmental immunity from a suit for money damages unless it has been waived."). Absent consent, a governmental unit can be sued "only if the Legislature waives immunity in 'clear and unambiguous language.'" *Sampson*, 500 S.W.3d at 384 (quoting Tex. Gov't Code § 311.034).

3

Under the Act, which waives sovereign immunity under certain circumstances, *see id.*, if the plaintiff's claim "arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property," Tex. Civ. Prac. & Rem. Code § 101.022(a).  The duty owed to a licensee on private property is that the landowner "not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not."  *Sampson*, 500 S.W.3d at 385 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).  However, the limitation of duty set out in section 101.022(a) of the Act "does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices."  Tex. Civ. Prac. & Rem. Code § 101.022(b).

**DISCUSSION**

*Which Section of the Tort Claims Act Applies?*

Credeur both pled a waiver of immunity under section 101.021 of the Act, which allows for claims arising out of a condition or use of tangible personal property or real property, *id*. § 101.021(2), and asserted that "the defect which caused her to fall constitutes a 'special defect' as contemplated in § 101.022(b)," concluding her petition by pleading her claim as one for negligence arising out of a hazardous condition or a special defect.  However, the Act's "scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property."  *Miranda*,

4

133 S.W.3d at 233. Instead, Texas courts "consistently treat[] slip/trip-and-fall cases as presenting claims for premises defects." *Sampson*, 500 S.W.3d at 386. Under the guidance provided by the Supreme Court, we view Credeur's claim as one for premises liability and not for negligence arising out of the use or condition of real property. *See id.*; *Miranda*, 133 S.W.3d at 233.[3] We sustain the City's first issue and dismiss Credeur's claim to the extent it might also be asserting a claim related to the condition or use of real property.

Thus, unless Credeur can show that her claim falls within the Act's waiver related to premises-defect claims, the City is immune from suit. *See Sampson*, 500 S.W.3d at 386-87 (premises-defect liability is determined by reference to duty of care owed to claimant for premise and special defects as specified in section 101.022); *City of Bastrop v. Bryant*, No. 03-14-00591-CV, 2015 WL 5097250, at *2 (Tex. App.—Austin Aug. 27, 2015, no pet.) (mem. op.) (although claim was asserted in terms of both premises-liability and arising-from-use-of-property theories, claimant could not circumvent heightened premises-defect standards by re-casting claim as relating to negligent condition or use of property and thus had to satisfy "the elements of the statutory waivers that govern premises-liability claims"). Viewed in that light, we must consider whether the condition constituted a special defect, and if not, whether the City established a lack of actual knowledge and whether Credeur should be allowed to conduct further discovery related to the issue.

---

[3] "The distinction between a use or condition of tangible personal property claim as opposed to a premises defect claim, however, is whether it was the contemporaneous, affirmative action or service (use) or the state of being (condition) of the tangible property itself that allegedly caused the injury, or whether it was a condition created on the real property by the tangible personal property (a premises defect)." *Sampson v. University of Tex.*, 500 S.W.3d 380, 390 (Tex. 2016).

<u>*Was the Alleged Defect a Special Defect?*</u>

Credeur describes her accident as follows in her live petition: she was "walking to her house with her son and left the sidewalk to cross to the other side of the street," and while walking the "short distance between the sidewalk and street, she stepped onto a cement block covering a pipe and then stepped onto the adjacent, improperly sealed water valve cover." Credeur alleged that both the water-valve cover and the cement block were obscured by the overgrown lawn and that she "lost her balance from stepping on the cement block, landed on the improperly sealed water valve cover, attempted to regain her balance but was unable to do so and fell." Credeur provided the following photograph of the area:



Credeur notes that courts have held that a defect on a sidewalk may constitute a special defect because a sidewalk is sufficiently related to a roadway. *See, e.g.*, *City of Austin v. Rangel*, 184 S.W.3d 377, 383-84 (Tex. App.—Austin 2006, no pet.) (describing sidewalk as

portion of street between curb and adjacent property and "intended for pedestrian use" (quoting Tex. Trans. Code § 541.302(16)); *City of El Paso v. Chacon*, 148 S.W.3d 417, 423 (Tex. App.—El Paso 2004, pet. denied). Assuming that the sidewalk in this case was "sufficiently related to the street" to come within the realm of special defects, *see Rangel*, 184 S.W.3d at 383, the alleged defect in this case was not on the sidewalk itself but in the grass *near* the sidewalk. The Supreme Court has explained that "conditions can be special defects 'only if they pose a threat to the ordinary users of a particular roadway.'" *University of Tex. v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (quoting *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009)). Credeur stepped off the sidewalk to cross the street, walking through an area not intended for pedestrian use, and thus the defect she encountered cannot be considered to have posed a danger to the ordinary users of the sidewalk. *See id.* The condition that caused Credeur's injury is less like those described in *Rangel*[4] or *Chacon*[5] and more like the one described in *Purvis v. City of Dallas*, in which the plaintiff fell into a manhole located "a few feet west" of a sidewalk "in a narrow, grassy area between a parking lot and the public sidewalk" running alongside the street. No. 05-00-01062-CV, 2001 WL 717839, at *2-4 (Tex. App.—Dallas June 27, 2001, no pet.) (not designated for publication) (holding that condition did not "meet statutory definition of a special

---

[4] *City of Austin v. Rangel* involved an open, uncovered meter box located on a sidewalk, which we held was a special defect, noting that it was unexpected, located on a downtown public sidewalk, and eleven inches wide. 184 S.W.3d 377, 384 (Tex. App.—Austin 2006, no pet.).

[5] In *City of El Paso v. Chacon*, our sister court similarly concluded that an uncovered utility junction box located on a city sidewalk was a defect "related to a street" because any pedestrian who wished to walk along the "busy public thoroughfare" had to use the sidewalk. 148 S.W.3d 417, 423 (Tex. App.—El Paso 2004, pet. denied). The court of appeals held that the defect was analogous to an excavation and thus a special defect because it was not merely an eroded or cracked and crumbling surface, was not a defective covering, and was not permanent but instead was unexpected, unusual, and posed a danger to normal users. *Id*. at 424-25.

defect").[6]  We hold that the condition alleged in this case was not a special defect under the Act and instead was an ordinary premises defect.  We sustain the City's second issue on appeal.

*Did the City Have Actual Notice?*

When a claim arises from a premises defect, a governmental unit owes a claimant "the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises."  Tex. Civ. Prac. & Rem. Code § 101.022(a).  The governmental unit's duties are thus: (1) not to injure a licensee by willful, wanton, or grossly negligent conduct, and (2) to use ordinary care either to warn of or to make reasonably safe a dangerous condition that the governmental unit is aware of and the licensee is not.  *Sampson*, 500 S.W.3d at 391 (quoting *Payne*, 838 S.W.2d at 237).  There are no allegations or indications of willful, wanton, or grossly negligent conduct.  Therefore, if the City showed that there was no evidence of its awareness of the defect, its plea to the jurisdiction should have been granted.  *See id.*

The City insists that it established that it did not have actual notice of the defect before Credeur's accident.  As evidence of its lack of actual knowledge, the City provided

_____

[6] *See also City of Dallas v. Freeman*, No. 05-18-00961-CV, 2019 WL 3214152, at *4 (Tex. App.—Dallas July 17, 2019, no pet.) (mem. op.) (no special defect when alleged defect "exist[ed] where the sidewalk meets the curb and [did] not extend to any of the traversable part of the sidewalk, and thus, [did] not physically impair a pedestrian or bicyclist from traveling on the sidewalk itself"); *City of Arlington v. S.C.*, No. 02-17-00002-CV, 2017 WL 3910992, at *1 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.) (improperly sized manhole cover located on concrete apron that was "basically an extension of the curb" on city's right-of-way in front of residence was not special defect); *Duenes v. City of Littlefield*, No. 07-05-0420-CV, 2007 WL 270415, at *2-3 (Tex. App.—Amarillo Jan. 31, 2007, no pet.) (mem. op.) (meter box near residence, about seventeen feet from street, and in area where there were no curbs that plaintiff argued was "akin to a public sidewalk" was not special defect); *Madern v. City of Pasadena*, No. 01-05-00337-CV, 2006 WL 560183, at *3 (Tex. App.—Houston [1st Dist.] Mar. 9, 2006, pet. denied) (mem. op.) (no special defect when manhole was "located more than five feet away from the road, so that vehicular passengers and other normal users of the roadway were unlikely to encounter it.  Only a pedestrian whose destination required him to leave the proximity of the road was ever likely to walk on the manhole.").

declarations by Christopher Ahrens, a City employee who was a Business Process Specialist in the City's 3-1-1 Division in August 2018; Justin Norvell, an engineer employed in the City's Public Works Department; and Scott Morrow, the "Division Manager for Pipeline Maintenance in the City of Austin Water." Ahrens stated that the City relies on reports made to its "main number, 311, or 512-974-2000 and a mobile application" for knowledge of "any issues, complaints, or service requests about sidewalk and roadway conditions. Said reports are recorded in the 311 Customer Service Request Database, which is maintained in the regular course of business." Ahrens further explained that in August 2018, he "conducted a complete and thorough search of all reports made" between October 2013 and August 2018 "for any incident within a 500 foot radius of 12336 Deerbrook Trail" and located no records indicating that the City had received "any reports pertaining to an unsecured cover to a manhole or water valve at or near 12336 Deerbrook Trail." Norvell stated that the Public Works Department "maintains records of service requests and work orders assigned to the Public Works Department in a database called Maximo" and that "[a]ll work orders from mid-2014 and all service requests from September 2015 onward are included in Maximo and searchable by address and/or date." In September 2018, Norvell "conducted a complete and thorough search in Maximo of all service requests and work orders at the address of 12336 Deerbrook Trail from September 2015 to September 11, 2018," and found "no records or service requests or work related to missing valve covers at 12336 Deerbrook Trail during that time period." Finally, Morrow declared that Austin Water also maintains a database of records of all service requests dating back to 2008 and that in October 2018, he conducted a "complete and thorough search of the Austin Water database for service requests at the address of 12336 Deerbrook Trail." Morrow found three service requests: one from October 9, 2008, was related to a sewer line backup; a second from

9

October 10, 2008, was related to "a sewer line stopped"; and a third from April 2, 2011, was a meter cut for repair. He did not find service requests or work related to missing valve covers at 12336 Deerbrook Trail.[7]

Credeur, on the other hand, asserts that the City had refused her "attempts to determine what knowledge the City had of the defect." Credeur contends that the City does not know who was reading the meter in the months leading up to the accident, that the City had only identified Corix Utilities as its meter-reading subcontractor at the hearing on the City's plea to the jurisdiction, and that Corix had denied in its discovery responses that it was responsible for maintenance or water reading in the area.[8] She argues that the City "stifled discovery" and that

> [w]hile it may be true that notices were not made to non-emergency services or to other government services, it also could be that whoever the City contracted with did make a complaint directly to the City. However, The City of Austin does not even know who to ask to see whether a report was ever made.

---

[7] In her petition, Credeur alleged that Riedel "had placed the cement block over the pipe due to the missing cover," that the cover had been missing "for some time," and that Riedel "had previously complained to Defendant The City of Austin about the missing cover." She did not, however, support those allegations with any form of evidence. For its part, although denials of requests for admission are not competent summary judgment evidence, *Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143, 143 (Tex. 1980), the City provided Riedel's discovery responses, in which she denied that she had complained to the City about the uncovered pipe or a loose metal grate. Riedel further denied that she knew that there was a loose grate, an uncovered pipe, or a cinderblock placed on top of the pipe; had placed the cinderblock on top of the pipe; or had made any complaints to the City about the alleged defect.

[8] Although Credeur asserts that the City did not identify Corix as a meter-reading subcontractor until the hearing, Credeur's live petition, filed about five months before the hearing, named Corix as a defendant. At the hearing, Credeur stated that although the City had not listed Corix as a responsible third party, she had sued Corix "because we understand that Corix may be responsible for the maintenance in that area." The City said that it "does have a contract with Corix for meter reading" but that it "didn't receive any reports from Corix. They can tell us when they do—they can report maintenance issues just like any person could." Credeur, for her part, stated at the hearing that "Corix denies any knowledge" and "has denied ever doing any work on that."

10

Credeur contends that the trial court properly denied the City's plea so that further discovery could be conducted as to "who had control over the water meter, when the manhole cover was moved, when the brick was placed, and when, if ever, it was reported to the City or the City's contractor."

At the hearing, the City argued that "all the evidence shows that the City of Austin did not know of this condition beforehand." It further asserted that it had "provided affidavits from every department that could possibly have any notification," explaining that Austin Water, 3-1-1, and the Public Works Department had each conducted searches going back several years and had found no relevant reports. In asking the trial court to stay non-jurisdictional discovery, the City asserted that it had "provided the jurisdictional discovery" and responded to "requests that are related to jurisdiction, many of them." The City's attorney explained that in response to Credeur's request "for all complaints and maintenance requests or communications with other companies from the last five years regarding this address," "[w]e don't really have anything at all. We did a search and can't find anything." The City sought a stay of Credeur's other discovery requests because some of them "have been quite overbroad such as all slip and fall lawsuits in the last five years, all documents that the City has regarding policies and procedures and maintenance of underground utilities. I don't even know how many pages that would be." Counsel stated that the City had provided its protocols for responding to 3-1-1 service requests; its procedures "on installation and meter reading, manhole requirements, the plat of the area"; the standard operating procedures for the Public Works Department, the applicable wastewater service permit; and "everything that Austin Water had, every work order Austin Water has from this address which are from 2011—well, 2007, 2008. . . . There just aren't any. I'm not sure how else the City could prove a negative in this case, your Honor."

11

Credeur responded that she was simply being told "to take their word for it" that the City had not received any reports and that she should be allowed to conduct discovery about "how complaints are made, where they are made to, how they are recorded, who keeps track of them," whether there are "alternate ways people can notify the City," or whether the City conducted regular inspections or subcontracted that to other people, saying, "We just don't know what we don't know." At the conclusion of the hearing, held seven months after Credeur filed her original petition and five months after the City filed its plea to the jurisdiction, the trial court took the City's plea under advisement and issued a temporary stay of further discovery, stating that there could be "no further discovery requirement propounded upon the City of Austin and no further duty. They have fully satisfied those jurisdictional issues that are being addressed through the discovery."

"Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *University of Tex. v. Aguilar,* 251 S.W.3d 511, 513-14 (Tex. 2008) (per curiam) (no evidence of actual knowledge that hose across sidewalk posed unreasonable risk of harm when University's Director of Health and Safety testified "that there had been no incidents of pedestrians tripping on water hoses on the campus in the past five years" and Assistant Director for Facilities, Operations and Maintenance testified there were no rules about use or placement of water hoses "because they had never been a problem on campus"). Although Credeur insists that the City "does not even know who to ask to see whether a report was ever made," the City presented declarations about fruitless searches conducted by the three departments or units that it explained might have received reports related to the alleged defect—Ahrens, who searched the system the

12

City uses to receive general reports of issues, complaints, or service requests related to sidewalks and road conditions; Norvell, who searched for all requests made to the Public Works Department at the address; and Morrow, who searched Austin Water's records for any service requests at the address and who found only three requests, made in 2008 and 2011 and none of which were related to a missing valve cover.

Credeur has not identified another City employee or department that might have received a report about the alleged defect, simply saying there *might* have been another recipient, and has not explained what relevant discovery the City resisted. The City, for its part, asserted that it had responded to discovery relevant to jurisdiction and produced evidence that no reports were made to its relevant departments. The trial court stated that the City had produced all discovery relevant to the issue of jurisdiction, Credeur does not argue that that statement was erroneous, and we will not second-guess that determination. We hold that Credeur did not raise a fact issue as to the City's actual knowledge of the alleged defect. *See id.* We sustain the City's third issue.

## CONCLUSION

We have sustained the City's issues on appeal. We thus reverse the trial court's order denying the City's plea to the jurisdiction. Because the City's lack of actual knowledge affirmatively negates jurisdiction under the Act, we render judgment dismissing Credeur's claim against the City. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 628-29 (Tex. 2009) (dismissing claims when evidence did "not rise to the necessary level" to waive city's immunity).

_____

Darlene Byrne, Chief Justice

13

Before Chief Justice Byrne, Justices Triana and Smith

Reversed and Rendered

Filed:   February 11, 2021